UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SYNQOR, INC. § | |
|     **Plaintiff** § | |
| § | |
| VS. § | Case No. 2:14-CV-287-RWS-CMC |
| § | |
| VICOR CORPORATION § | |
|     **Defendant** § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. § 636. The following motion is before the Court:

**Defendant Vicor Corporation's Motion for the Involuntary Dismissal of the '290 Patent (Docket Entry # 339).**

The Court, having reviewed the relevant briefing, is of the opinion the motion should be **GRANTED**.

### BACKGROUND[1]

This litigation began with a complaint filed by SynQor, Inc. ("SynQor") in January of 2011, asserting claims of patent infringement against three defendants—Vicor Corp. ("Vicor"), Ericsson, Inc. ("Ericsson"), and Cisco Systems, Inc. ("Cisco"). Cause No. 2:11-cv-54 ("'54 case"). SynQor and Ericsson quickly settled, and SynQor filed an amended complaint shortly

---

[1] This case has a lengthy and complicated procedural history, which the Court provides in its Report and Recommendation on Defendant Vicor Corporation's Motion for Summary Judgment that Circuits Containing Vicor Bus Converters Do Not Infringe the Asserted SynQor Patent Claims and Request for Hearing (Docket Entry # 334), entered contemporaneously herewith.

1

thereafter. In the '54 case, SynQor alleged, among other things, Vicor infringes the patents at issue when it makes, imports, uses, promotes, offers to sell, and/or sells unregulated and/or semi-regulated bus converters used in intermediate bus architecture power supply systems. According to SynQor, Vicor targets products to customers, such as computer and telecommunications equipment manufacturers, including Cisco, that sell and ship products all over the world. SynQor further alleged Cisco is one of Vicor's customers, and Cisco makes, imports, uses, offers to sell, and/or sells products incorporating unregulated and semi-regulated bus converters in intermediate bus architecture power supply systems which infringe the patents at issue.

In early 2014, SynQor's claims against Vicor and Cisco were severed into two newly-created cases—Cause No. 2:14-cv-286 (against Cisco) and Cause No. 2:14-cv-287 (against Vicor) ("'287 case" or "current case"). Thereafter, on the eve of trial, SynQor and Cisco reached a settlement.[2]

In the current '287 case against Vicor, SynQor alleges Vicor indirectly infringes four patents relating to unregulated bus converter technology—United States Patent Nos. 7,072,190 (the '190 patent), 7,564,702 (the '702 patent), 8,023,290 (the '290 patent) and 7,272,021 (the '021 patent). Docket Entry # 2, ¶¶ 35-58. Vicor has asserted counterclaims for declaratory relief regarding invalidity and non-infringement of the patents-in-suit, unenforceability of the '290 patent, unfair competition pursuant to Massachusetts General Laws Chapter 93A, and tortious interference with prospective economic advantage. *See* Docket Entry # 3.

In June of 2014, the parties filed eight summary judgment motions and three *Daubert* motions related to the various infringement, invalidity, and unfair competition allegations asserted

---

[2] On November 24, 2015, District Judge Schroeder entered an Order of Dismissal and Final Judgment in Cause No. 2:14cv286. '286 case, Docket Entry #s 370, 371.

2

in the case. In August 2014, the parties filed their initial pretrial submissions, including proposed jury instructions, exhibit lists, and deposition designations. The Court held a hearing on the summary judgment motions in September 2014 but did not issue any final orders disposing of those motions.

In March of 2015, the Federal Circuit issued an opinion in the *inter partes* reexamination of the '190 patent, finding several of the asserted claims invalid as anticipated, and raising questions concerning the validity of the remaining claims, which were remanded to the U.S. Patent Trial and Appeal Board ("PTAB"). Docket Entry # 221. Vicor informed the Court that the Federal Circuit opinion on the '190 patent was a strong indicator that other asserted claims may be found invalid or unpatentable in various reexamination proceedings, and in October 2015, Vicor moved to stay the current case pending the completion of the reexaminations and related appeals. Docket Entry # 239.

On November 24, 2015, the undersigned granted Vicor's motion and ordered the case be stayed pending completion of the *inter partes* reexaminations and any appeals of the reexamination decisions to the Federal Circuit Court of Appeals. SynQor initially filed a motion to reconsider the order, but after the PTAB reached decisions in all four pending *inter partes* reexaminations on May 2, 2016, SynQor stipulated to a continued stay, subject to a reservation of rights to move for a modification or lifting of the stay based on further developments in the reexaminations. *See* Docket Entry # 281.

On May 23, 2016, District Judge Schroeder entered an Order Regarding Stipulation Regarding Stay of Case Pending Reexamination. Docket Entry # 282. The Court ordered the case to remain stayed pending completion of the *inter partes* reexamination of all of the asserted patent claims, including any appeals of the reexamination decisions to the Federal Circuit Court of

Appeals, subject to the following: Plaintiff and Defendant each reserved the right to move the Court for a modification of the terms of or of a lifting of the stay based on any development in the reexaminations, and the parties were to file a joint status update with the Court in the event of any development in the reexaminations, independent of whether or not a party moved for a modification of the stay. *Id*.

In November of 2018, SynQor moved to lift the stay, asserting it would be significantly prejudiced by a continued stay. At the time, two of the *inter partes* reexaminations had concluded (at least in the respects relevant to this litigation)—the '702 patent reexamination had concluded with a Federal Circuit opinion finding all asserted claims not unpatentable, and the '021 patent reexamination had concluded with a Federal Circuit opinion finding all asserted claims unpatentable. *See* Docket Entry # 293. The other *inter partes* reexaminations for the other two patents (the '190 and '290 patents) were still pending, and Vicor had also instituted two new proceedings in the Patent Office—*ex parte* reexaminations of the '702 and '190 patents. Some of SynQor's asserted claims had been rejected in non-final decisions in these *ex parte* proceedings, and all asserted claims of the '190 patent had been rejected in the '190 *inter partes* reexamination. The Federal Circuit had also recently vacated a decision by the PTAB in the '290 *inter partes* reexamination finding the asserted claims not unpatentable.

Against this backdrop, on January 3, 2019, the undersigned denied SynQor's motion to lift the stay without prejudice to refiling, noting no new circumstances warranted lifting the stay at that time. SynQor filed objections to the January 3, 2019 order. On July 12, 2019, Judge Schroeder overruled Plaintiff's objections. Docket Entry # 296. The Court granted SynQor leave to reurge its motion to stay after six months from the date of the order. *Id.* at p. 6.

In March of 2021, SynQor filed another motion to lift the stay, requesting the Court lift the stay, hold a scheduling conference to set this case for "clean-up discovery, the completion of pretrial submissions, and setting the pretrial conference and trial." Docket Entry # 302 at p. 1. On November 16, 2021, the undersigned granted SynQor's motion. Docket Entry # 311. The Court set a status conference in order to "address SynQor's proposal to dismiss the '290 patent, the Court's inclination to deny any pending motions without prejudice to refiling under an expedited schedule, and Judge Schroeder's availability for a realistic, but prompt, trial setting." *Id*. at p. 12.

The undersigned held the status conference on February 2, 2022. At the conference, the undersigned indicated the Court would deny all pending motions without prejudice to refiling. Since that time, three motions have been filed: (1) Defendant Vicor Corporation's Motion for Summary Judgment that Circuits Containing Vicor Bus Converters Do Not Infringe the Asserted SynQor Patent Claims and Request for Hearing (Docket Entry # 334); (2) Defendant Vicor Corporation's Motion for the Involuntary Dismissal of the '290 Patent (Docket Entry # 339);[3] and (3) SynQor's Motion for Summary Judgment on Vicor's State-Law Counterclaims (Docket Entry # 351). The Court now turns to Vicor's motion for the involuntary dismissal of the '290 Patent.

## MOTION TO DISMISS

In its current motion, "Vicor seeks the Court's assistance in holding SynQor to its promise to dismiss the '290 patent from the case with prejudice." Docket Entry # 339 at p. 1. According to Vicor, in its motion to lift the parties' stipulated stay pending reexamination, SynQor

---

[3] At the February 2, 2022 status conference, the undersigned advised the parties she would issue a Report and Recommendation on Vicor's refiled motion for summary judgment of non-infringement before her retirement May 25, 2022. The Court is also entering contemporaneously therewith this Report and Recommendation on Vicor's motion for involuntary dismissal of the '290 patent, as the undersigned's lifting of the stay was heavily influenced by SynQor's alternative proposal to dismiss the '290 patent if a reasonably prompt trial date could be set.

5

represented to the Court that it "would be amenable to dismissing with prejudice its claims as to the '290 patent altogether, and proceeding solely on the '190 and '702 patents, if a reasonably prompt trial date could be set." *Id*. (quoting Docket Entry # 302 at p. 10). Vicor interprets the Court's order lifting the stay as an acceptance of SynQor's representation.

Vicor points out the Court set an October 17, 2022 trial date, which SynQor agreed during the February 2, 2022 status conference was "prompt enough to kick in the agreement." Tr. at 7:11-16. According to Vicor, despite having received what it demanded as a condition for lifting the stay, SynQor is now refusing to live up to its end of the bargain. Docket Entry # 339 at p. 1 (noting SynQor took the position at the February 2 status conference that dismissal of the '290 patent should not take place until immediately before trial because, according to SynQor, if the trial were postponed, it would "lose the benefit of the bargain of dismissing the '290 patent in exchange for a prompt trial"). Vicor indicates the parties' discussions post-status conference have been unsuccessful, and "SynQor has maintained its refusal to dismiss the '290 patent, despite concessions from Vicor" in response to SynQor's concern at the status conference that Vicor may attempt to re-stay the case on the eve of the October trial date. *Id.* at p. 5.

Noting concessions by Vicor were not a condition of SynQor's original representation, Vicor proposed a stipulation that it will not seek to postpone or delay the October 17 trial date for reasons unrelated to scheduling conflicts of trial counsel. *Id.* At the status conference, Vicor represented to the Court trial counsel had a potential scheduling conflict with another trial scheduled to start October 24. Tr. at 33:13-34:24. As urged by Vicor in its motion, Vicor does not agree that SynQor is entitled to any concession, other than setting of a prompt trial date, to live up to its promise to dismiss the '290 patent with prejudice. Vicor maintains SynQor's prior representation that it would dismiss the '290 patent was conditioned only on a prompt trial date

6

being "set," and by refusing to voluntarily dismiss the '290 patent even after the setting of a prompt trial date, "SynQor is reneging on its promise to the Court." *Id*. at p. 1.

Vicor asserts "SynQor's bait-and-switch" is prejudicial because Vicor now faces the prospect of engaging in supplemental discovery and pre-trial proceedings for a case that has not been streamlined to the extent contemplated in lifting the stay. *Id*. at pp. 1-2. According to Vicor, "[w]ith the lifting of the stay, Vicor must now engage in supplemental discovery, incur the burden of the pretrial submission process, and prepare for trial on the surviving '190 and '702 claims with no guarantee that the added complexity of the '290 claims will not later be reinjected into the case." *Id*. at p. 10 (noting it is "burdensome and wasteful to prepare for trial on two patents, with a third patent (having a broader scope) waiting in the wings"). Vicor further states as follows:

> If dismissal of the '290 were to be deferred and if asserted '290 patent claims, which now stand rejected, were to be resurrected in reexamination, SynQor would continue to assert the '290 patent, expand the scope of the case, and waste all of the parties' efforts between now and the eve of trial. This is unfair and contrary to the rationale for lifting the stay in the first place. Equity demands that SynQor be held to its representations, and that the '290 patent be immediately dismissed from the case. Vicor respectfully requests the Court's assistance in obtaining this relief.

*Id.* at p. 2.

In its response, SynQor acknowledges that in exchange for a prompt trial on the '190 and '702 patents it agreed to dismiss the '290 patent. Docket Entry # 345 at p. 1. SynQor further acknowledges the Court "tentatively scheduled a prompt trial – in the third week of October 2022" at the status conference on February 2, 2002. *Id.* However, SynQor stated the Court acknowledged at the status conference that the trial might be delayed for a number of reasons, "among them a competing trial that Vicor's lead counsel [was] already scheduled to conduct on the same dates, which—as he told the Court—will be 'really hard' to move." *Id*. (quoting Tr. at 33:13–25).

SynQor presents its interpretation as to what transpired as a result of the status conference, stating as follows:

> In view of these facts, the parties presented their views about how to handle the dismissal of the '290 patent. SynQor explained that it would be denied the benefit of the bargain, if claims relating to the '290 patent were dismissed immediately, and the trial were delayed. In response, Vicor raised the concern that keeping the '290 claims in the case would impose the expense of preparing for a trial that might never happen. The Court provided a resolution—it instructed the parties to come to an agreement that 'you just lay that aside and don't have to prepare for trial on that particular patent,' and, were the trial postponed, 'we'll cross that bridge when we come to it.' (*Id*. at 31:15–32:24.) Both sides agreed to work in good faith to reach such an agreement. (*Id*. at 33:8 ('Mr. Verhoeven: I'll work with them.').)
>
> Vicor is now trying to reverse course. It has refused to come to an agreement to set aside claims relating to the '290 patent. Instead, it has demanded a different, one-sided deal— immediate dismissal of the parties' '290 claims, regardless of whether a prompt trial ever occurs—that is calculated to deny SynQor the benefit of the bargain. Indeed, Vicor continues to expressly reserve the right to delay the trial based on the scheduling conflicts of its counsel. (Dkt. No. 339 at 5 & n.1.) And, in an effort to paint SynQor's position as a surprise, Vicor's motion acts as if the Court said nothing on this subject at the February 2 hearing—it nowhere addresses the direct guidance the Court provided to the parties.

*Id.* According to SynQor, Vicor's proposal — SynQor's claims of infringement be dismissed with prejudice but that Vicor's counterclaims be dismissed without prejudice — is inequitable.[4] *Id*. at p. 5 (further noting that despite its proposed stipulation, Vicor continued to expressly reserve the right to delay the trial based on the conflicts of its trial counsel).[5]

SynQor requests the Court enter an order providing that the dismissal of the parties' '290 claims—SynQor's claims of infringement, and Vicor's counterclaims—will become effective as of the commencement of the October 2022 trial, to be revisited as circumstances warrant. *Id*. at

---

[4] The Court notes SynQor has filed a Motion for Summary Judgment on Vicor's State-Law Counterclaims, but the motion does not address the '290 patent. *See* Docket Entry # 351 at p. 1, n. 1. To the extent warranted, the parties may filed additional or supplemental briefing regarding Vicor's counterclaims.

[5] In its motion, SynQor stated since the hearing a court in a different case has asked two of SynQor's trial counsel about their availability for trial on October 17, 2022. Docket Entry # 345 at p. 6. However, in its surreply, SynQor stated the other trial is now scheduled to begin in December of 2022. Docket Entry # 347 at p. 3, n. 1.

p. 2. According to SynQor, "in fairness, if a reasonably prompt trial is not held, then SynQor should get to include the '290 patent too." *Id.* at p. 6. SynQor states the Court's suggested "approach" solves any prejudice to Vicor, noting that "in practice, the '290 patent adds little additional expense—for example, the witnesses are the same, and Vicor will need to produce the same supplemental discovery." *Id.* at pp. 7-8. SynQor asserts the parties should be able to "lay aside '290 claims and agree that they 'don't have to prepare for trial on that particular patent.'" *Id.* at p. 8 (quoting Tr. at 31:19-21) ("Then, if circumstances change, the Court and the parties can figure out what course of action would be in the interests of justice."). According to SynQor, although it continues to seek trial in October of this year, "if a reasonably prompt trial does not occur, SynQor should not have been forced to prematurely forego its '290 patent claims." *Id.* at p. 8.

## APPLICABLE LAW

The federal courts are vested with the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). However, when these inherent powers are invoked, they must be exercised with "restraint and discretion." *Id.* (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991); *Natural Gas Pipeline,* 2 F.3d at 1406 (quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980))).

"The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation. The underlying purpose of the doctrine is 'to protect the integrity of the judicial process.'" *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007) (quoting *Hossaini v. W. Mo. Med. Ctr.,* 140 F.3d 1140, 1142–43 (8th Cir.1998) (citations

9

omitted); also citing *Key Pharms. v. Hercon Labs. Corp.,* 161 F.3d 709, 715 n. 1 (Fed.Cir.1998) (collecting cases and other relevant authority)). Judicial estoppel is an equitable doctrine that may be invoked by a court at its discretion. *Id.* (citing *New Hampshire v. Maine,* 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). In determining whether judicial estoppel applies, courts in the Fifth Circuit consider three elements: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Hughes Tech. Servs., L.L.C. v. Glob. Consulting & Mech. Servs., L.L.C.*, Civil Action No. 2:21-CV-0156-RSP, 2022 WL 811058, at *2 (E.D. Tex. Mar. 16, 2022) (citing *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (quoting *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (*en banc*))).

## DISCUSSION

Vicor asserts SynQor has made representations that both the Court and Vicor have relied upon. The Court agrees. In its motion to lift the stay, SynQor asserted the "lone pendency of the '290 patent *inter partes* reexamination—which may last several more years—should not prevent the case from moving forward." Docket Entry # 302 at p. 1. In an "alternative" proposal, SynQor promised that "if it [were] reasonable to schedule a reasonably prompt trial date, SynQor would be amenable to dropping the '290 patent altogether." *Id.* at 1-2. As pointed out by Vicor, the only caveat in SynQor's offer was that if trial was not promptly scheduled, and the '290 patent reexamination concluded in SynQor's favor, SynQor should be able to include it in the trial. *Id.* at 2.

It was the Court's understanding from SynQor's briefing that it would drop the '290 patent in exchange for the scheduling of a prompt trial date. In the Court's November 16, 2021 order lifting the stay, the undersigned noted that while the reexamination proceedings had simplified

10

the issues and most likely conserved judicial resources, to continue the stay would only further delay this case. Docket Entry # 311 at p. 11. The Court stated any likelihood of further simplification of the issues did not justify extending the stay previously issued by the Court, "especially considering SynQor's alternative proposal regarding the '290 patent." *Id.* The Court further stated "SynQor's decade-old claims of infringement of the '**190 and '702 patents** are ready for trial, and should move forward." *Id*. (emphasis added).

The Court scheduled a status conference, noting the Court would address at that time SynQor's proposal to dismiss the '290 patent, along with the Court's inclination to deny any pending motions without prejudice to refiling under an expedited schedule, and District Judge Schroeder's availability for a realistic, but prompt, trial setting. In a footnote, the Court cited *EchoStar Techs., Corp v. TiVo, Inc.*, Civil Action No. 5:05CV81, 2011 WL 13217852, at *1 (E.D. Tex. Feb. 8, 2011), specifically noting EchoStar represented it would dismiss two patents from this case if the stay was lifted.

In that case, the plaintiff sought lift of a four-year stay. *Id.* at *1. In the briefing, the plaintiff represented it would dismiss from the case two of the patents at issue, one of which was still before the PTO, in exchange for the stay to be lifted. *Id.* Citing the court's inherent power to control its own docket and how the reexamination proceedings had simplified the case, the undersigned lifted the stay. *Id*. at *2. The docket reveals three of the four original patents were no longer at issue after the stay was lifted. *See* Cause No. 5:05-CV-81, Docket Entry # 144 (where the parties disputed the schedule to take the one remaining patent to trial).

Here, following the lift of the stay, the Court held a status conference on February 2, 2022. At the status conference, the Court presented the parties a trial date of October 2022 to which SynQor agreed was "prompt enough to kick in the agreement." Hearing Tr. at 7:11- 16 (COURT:

11

"… He does have the third week of October in Marshall. And so, I think we can operate from that. And it sounds to me like that you all think that's prompt enough to kick in the agreement. MR. HATCHER: Certainly, Your Honor, from SynQor's perspective."). Nevertheless, SynQor took the position that dismissal of the '290 patent should not occur until immediately before trial. *Id.* at 8:20-21 ("we believe the timing should be tied to the prompt trial actually occurring"); *id.* at 21:16-22 ("if that happened and we do have to continue the trial date past October. . . so we don't get the prompt trial, SynQor would lose the benefit of the bargain of dismissing the '290 patent in exchange for a prompt trial"); *id*. at 21:23-22:3 ("So what we would propose . . . is that the parties' joint dismissal of the '290 and the '021 claims be set to occur two to three weeks before the trial date and be effective on the commencement of trial"); *see also id.* at 32:8-22 (SynQor suggesting it could resurrect its infringement claims regarding '290 patent depending on the results of reexamination and in the event the October trial date ends up with a "year-long delay"). Although SynQor's counsel agreed an October 17 trial date is "prompt enough to kick in the agreement," counsel began to address the timing of the dismissal. At that point, the Court indicated the parties might could come to an agreement on the timing of the dismissal, mentioning the possibility of the parties' agreeing to lay aside the '290 patent and not prepare for trial on that particular patent. *Id*. at 31:19-22.

  According to Vicor, since the February 2, 2022 status conference, SynQor has maintained its refusal to dismiss the '290 patent, despite concessions from Vicor (a stipulation that Vicor will not attempt to re-stay the case on the eve of the October trial date). Vicor states a prompt trial date has been scheduled, and the '290 patent should be dismissed with prejudice, involuntarily if necessary, in order to bring the scope of the remaining case in line with what SynQor offered in its motion to lift the stay and what the Court intended when it granted SynQor's motion.

12

SynQor asserts "irrevocably dismissing the '290 claims—even while Vicor holds back from committing to a trial date, and given the inherent uncertainties of whether the currently scheduled date will remain feasible for the Court—is simply a way of securing an unfair advantage for Vicor." Docket Entry # 345 at p. 8. However, in its reply, Vicor represents to the Court "it has secured alternate lead counsel and is prepared to move forward with the October 17 trial date in the event Mr. Verhoeven is not available." Docket Entry # 346 at pp. 3-4 (further stating this "representation underscores the importance of effectively addressing the lingering threat of the '290 patent").[6]

The Court finds delaying the dismissal of the '290 patent until the eve of trial would prejudice Vicor's ability to prepare for trial. According to Vicor, the '290 claims are much broader than the surviving claims of the '190 and '702 patents, "meaning that a trial involving all three patents would be materially different from the trial on two patents currently scheduled for October 17." *Id*. at p. 4; *see also id*. at p. 5 (stating that absent dismissal with prejudice of the '290 patent claims, SynQor would later seek to sever the '290 into a separate action (which the undersigned indicated at the status conference she was not inclined to do) or seek to expand the two-patent case into a three-patent case, adding cost, burden, and complexity).

The undersigned allowed the parties an opportunity to agree on the terms of the dismissal, including any stipulations. Barring an agreement, the fact remains the undersigned, in lifting the stay, was heavily influenced by SynQor's proposal to dismiss the '290 patent if a reasonably prompt trial date could be set. As pointed out by Vicor in its reply, SynQor does not, and cannot,

---

[6] The Court further notes Vicor's statement in its reply that, prior to filing the current motion, it proposed a stipulation for dismissal providing that Vicor would not seek to postpone or delay the October 17 trial date for reasons unrelated to scheduling conflicts of trial counsel. Docket Entry # 346 at p. 3.

deny that the Court has set a prompt trial date, satisfying all of the conditions SynQor originally set for dismissal of the '290 patent." *Id*. at p. 1 (further stating SynQor does not dispute that the Court has the discretion to dismiss the '290 patent). The undersigned recommends the Court exercise its discretion here and dismiss with prejudice the '290 patent at this time.

## RECOMMENDATION

Based on the foregoing, it is

**RECOMMENDED** that Defendant Vicor Corporation's Motion for the Involuntary Dismissal of the '290 Patent (Docket Entry # 339) be **GRANTED**.

### Objections

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from de novo review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*., 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), superseded by statute

14

on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 25th day of May, 2022.**

*/s/ Caroline M. Craven*
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE