IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SYNQOR, INC., <br><br> Plaintiff, <br><br> v. <br><br> VICOR CORPORATION, <br><br> Defendant. | § <br> § <br> § <br> § CAUSE NO. 2:14-CV-00287-RWS-JBB <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

# ORDER

The above civil action was referred to Magistrate Judge Craven pursuant to 28 U.S.C. § 636.  On May 25, 2022, she issued a Report and Recommendation, recommending Vicor Corporation's ("Vicor") Motion for Summary Judgment of Non-Infringement (Docket No. 334) be denied.  *See* Docket No. 366 ("R&R").  Vicor filed objections to the R&R (Docket No. 370) pursuant to 28 U.S.C. § 636(b)(1)(C) and L.R. CV-72(b), and SynQor, Inc. ("SynQor") filed a response to Vicor's Objections (Docket No. 374).  After conducting a *de novo* review, the Court accepts the findings and recommendations of the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(C).

## LEGAL STANDARDS

I. Standard Governing Adopting Report and Recommendations

A district court must review a magistrate judge's report and recommendation in light of any objection thereto filed.  *Poe v. Bock*, No. EP-17-CV-00232-DCG, 2018 WL 4275839, at *2 (W.D. Tex. Sept. 7, 2018) (citing 28 U.S.C. § 636(b)(1)).  The court must conduct a *de novo* review of any portion to which any party files an objection.  *Id*. (citing FED. R. CIV. P. 72(b)(3); *Warren*

*v. Miles*, 230 F.3d 688, 694 (5th Cir. 2000)).  As to any portion for which no objection is filed, the court reviews for clearly erroneous factual findings and conclusions of law.  *Id*. (citing *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (per curiam)).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Id*. (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); also citing *St. Aubin v. Quarterman*, 470 F.3d 1096, 1101 (5th Cir. 2006) ("A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole." (citing *United States v. Cluck*, 143 F.3d 174, 180 (5th Cir. 1998)).

    II.    <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A factual dispute is genuine if the evidence could lead a reasonable jury to find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The applicable substantive law identifies which facts are material. *Id*.

In determining whether a genuine issue for trial exists, a court views all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. v. Zenith Radio*, 471 U.S. 574, 587 (1986).  The moving party bears "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

Once a party has made that showing, the nonmoving party bears the burden of establishing otherwise by supporting his contentions with some evidence. *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (citing *Celotex*, 477 U.S. at 324). The non-moving party cannot "rest upon mere allegations or denials of [the] pleading but must set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citation omitted). "Summary judgment is appropriate if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to a party's case." *Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 322).

**ANALYSIS**

Vicor raised two distinct arguments in its motion: (1) that none of the accused converters satisfy the "in synchronization" limitation (Docket No. 334 at 9–22) and (2) that SynQor cannot rely on the doctrine of equivalents regarding the "short transitions" limitation as a matter of law (Docket No. 334 at 23–29). After considering hundreds of pages of expert reports, deposition testimony and the briefed arguments, the Magistrate Judge issued an 88-page Report and Recommendation that found Vicor failed to carry its burden on each of these two issues and recommended that Vicor's motion for summary judgment of noninfringement be denied. Docket No. 366 ("R&R"). The Court now addresses each of Vicor's arguments in turn.

I. The "In Synchronization" Limitation

The parties agree that the "in synchronization" limitation requires that each controlled rectifier is turned from on to off (or vice versa) at some point during the change of the voltage waveform across a primary winding. *See* Docket No. 334 at 9; Docket No. 374 at 1–2. However, the parties dispute whether the limitation requires identifying the *specific instant* that the controlled rectifiers are turned from on to off (or vice versa) (as Vicor argues), or whether the limitation

allows one to treat the act of turning on and off the controlled rectifiers as a process that takes a finite amount of time (as SynQor argues).[1] Vicor moved for summary judgment of non-infringement only under its interpretation, and the R&R accepted that interpretation only for the purposes of Vicor's motion. *See* R&R at 57.

The R&R found that even under Vicor's claim construction interpretation, SynQor raised a factual dispute and recommended denying summary judgment on this ground. The R&R credited SynQor's reliance on its expert's opinion that even if one considers the controlled rectifiers to be switched on to off (or vice versa) in an instant, that instant occurs still "at some point in the course of the change of the voltage waveform across a primary winding" as required by the limitation. *See, e.g.*, R&R at 55–56. The R&R noted that SynQor's expert, Dr. Steven B. Leeb,[2] "concluded the 'entire time' during which one might argue the controlled rectifiers are 'turned off' and 'turned on' 'is within the time the primary winding voltage waveform is changing from one plateau to the other,' " and that Dr. Leeb pointed to either the "Miller-like plateaus" or the "shoulders" of the controlled rectifiers voltage waveforms as possible instants in time that the controlled rectifiers are turned on (or off). *Id*. (citing Dr. Leeb's reports).

Vicor objects to the R&R because, in its view, Dr. Leeb "abandoned" any theory other than his "shoulders" theory at his deposition, and that the "shoulders" cannot satisfy the "in

---

[1] The asserted claims include a limitation that "each controlled rectifier being turned on and off *in synchronization* with the voltage waveform across a primary winding." Docket No. 4 at 6. The parties previously stipulated this "in synchronization" limitation should be construed to mean that "each controlled rectifier being turned from on to off and from off to on at some point in the course of the change of the voltage waveform across a primary winding." *Id.* Vicor interprets this to require identifying the "specific moment[] in time" (or instant) that a controlled rectifier is switched from on to off or vice versa, and then to determine if that specific moment occurred when the voltage across a primary winding was changing. *See, e.g.*, Docket No. 370 at 1–2; Docket No. 34 at 14–16. SynQor interprets this construction as allowing "the *process* of turning on and turning off the controlled rectifiers" to take time, and that the limitation is found in the accused products as long as some part of that process occurs "during the change of the primary winding voltage waveform." *See, e.g.*, Docket No. 337 at 6; Docket No. 374 at 1–2.

[2] As noted in in the R&R, Dr. Leeb is not able to continue as SynQor's expert in this matter, and SynQor has retained Dr. James Dickens to review Dr. Leeb's positions. R&R at 18. This Order addresses the opinions of Dr. Leeb, as the parties did in the underlying briefing.

synchronization" limitation because the shoulders occur at the "boundary" of when the voltage waveform across the primary winding changes rather than "in the course of the change" of the voltage waveform as required by the construction. Docket No. 370 at 2–5 ("Vicor objects because: (1) as a factual matter, SynQor's expert opined under oath that CR switching occurs only at the 'shoulders;' and (2) as a matter of law, the shoulders are excluded from the period during which CR switching must occur.").

Vicor's objections rely too heavily on a narrow view of a small portion of Dr. Leeb's deposition, where he stated that: "I think the switches are exquisitely timed in the circuit. . . . I think the tuning in this circuit is precise to cause the switches to -- the switching events on primary and secondary to happen at the shoulders." Docket No. 370 at 3–4. Vicor's argument that the Court must interpret this statement as Dr. Leeb "abandoning" any theory other than relying on the shoulders to meet the limitation is not well founded. Dr. Leeb's surrounding testimony indicates the above statement was in response to Vicor's positions and that Dr. Leeb's more complete view is that "somewhere between the zero voltage crossing and where I located that vertical marker is where I believe the switch is conducting." Docket No. 343-8 (Leeb Depo.) at 430:2–433:6. Dr. Leeb's rebuttal expert report likewise explained that his shoulders theory is premised on the assumption that Vicor's claim construction is adopted and Vicor's argument that turning the rectifiers on and off occurs at zero voltage and zero current. *See* R&R at 58. In other words, the record supports treating Dr. Leeb's "shoulders theory" as an alternative opinion in response to Vicor's positions, not an abandonment of his earlier theories.

Finding that Dr. Leeb did not abandon other theories (such as relying on Miller-like plateaus to meet the "in synchronization" limitation) necessarily ends the inquiry given SynQor has marshalled sufficient record evidence to show at least a factual dispute under those theories.

*See* R&R at 58–61. Vicor does not object to that conclusion or the R&R's reliance on that evidence, other than to argue that the R&R should have found such theories abandoned. However, even if SynQor had abandoned any theory other than the "shoulders" opinion, Vicor's objections still fail to show the absence of a factual dispute. Vicor does not point to any clear concession from Dr. Leeb (or SynQor) stating that the events at the shoulders are not "in the course of the change of the primary winding voltage waveform." To the contrary, Dr. Leeb concluded that the "shoulders are part of the transition." Docket No. 337-12 ¶¶ 19–21; *see also* R&R at 59 & n.21 (finding that "Dr. Leeb's assertion that the 'shoulders' are 'part of the transition' " is not conclusory). Instead, Vicor relies on two claim construction opinions from other cases concerning unrelated patents to argue that the shoulders are not part of the transition. Docket No. 370 at 5. Vicor fails to show how those opinions, which do not address the claims, products or technology at issue, require the Court to find "as a matter of law, the shoulders are excluded from the period during which CR switching must occur." *See* Docket No. 370 at 3.

The R&R also rejected Vicor's argument that SynQor is precluded from relying on the doctrine of equivalents. R&R at 61–70. Vicor first objects by arguing that under *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005), SynQor's doctrine of equivalents analysis impermissibly "vitiate[s] the claim limitation." Docket No 370 at 6. The R&R analyzed that case extensively (R&R at 63–67), and Vicor does not explain any error in the analysis. In *Freedman Seating*, the Federal Circuit explained that "courts must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." *Freedman Seating Co.*, 420 F. 3d at 1358. SynQor argues that turning on or off "just outside the transition is insubstantially different from turning on/off just

within the transition." R&R at 66.  That doctrine of equivalents argument is fairly characterized as "a subtle difference in degree" of the kind the Federal Circuit has allowed, rather than "a clear, substantial difference" of the kind the Federal Circuit has disallowed.  *See Freedman Seating Co.*, 420 F. 3d at 1360–61.

Vicor also objects to the R&R's finding that SynQor's doctrine of equivalents theory does not violate the disclosure/dedication rule because the Court was "not convinced that one of ordinary skill in the art would come to the conclusion that the passage to which Vicor cites is an alternative to the 'in synchronization.' " Docket No. 370 at 6–7.  According to Vicor, "there is no requirement that the specification expressly characterize an embodiment as an 'alternative' for the dedication/disclosure doctrine to apply." *Id*. at 6.  But the R&R cited case law that states that "unclaimed subject matter must have been identified by the patentee as an alternative to a claim limitation." *See* R&R at 69 (quoting *Pfizer, Inc. v. Teva Pharms*., *USA, Inc.*, 429 F.3d 1364, 1379 (Fed. Cir. 2005)).  The passage in question (embodiment at col. 14 of the '190 Patent) explains that it provides "an additional optional structure" and Vicor has not shown that structure is identified as an alternative to the claimed invention.

Vicor also argues that SynQor characterized this embodiment as an "alternative" in a prior claim construction brief and that the R&R gave "insufficient weight" to that fact.  Docket No. 370 at 6.  Vicor's objections provide no guidance on what the sufficient weight should be regarding that statement.  The cited case law analyzes the intrinsic record, not after-the-fact characterizations in claim construction briefs, to determine if "a patent drafter discloses but declines to claim subject matter." *See* Docket No. 334 at 22 (citing *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002)).  That is unsurprising given the public notice function is based on the intrinsic record and that one of the motivations for the disclosure/dedication rule is to ensure

the Patent and Trademark Office had "the opportunity to consider whether these alternatives were patentable." *Johnson*, 285 F.3d at 1051; *see also Pfizer*, 429 F.3d at 1379 (Fed. Cir. 2005) ("[I]n *PSC Computer Products* the driving force behind the court's holding was ***the public notice function of patents*** [and] the public notice function of patents suggests that before unclaimed subject matter is deemed to have been dedicated to the public, that unclaimed subject matter must have been identified ***by the patentee*** as an ***alternative*** to a claim limitation." (emphasis added)).

And as noted above, the intrinsic record does not clearly identify the embodiment of column 14 as an alternative. Moreover, SynQor's discussion of the embodiment of column 14 is not as clear as Vicor describes. *See* Case No. 2:07-cv-497, Docket No. 416 at 21. In that citation, SynQor is arguing against Defendants' proposal to remove any timing requirement from the "in synchronization" limitation, not arguing that column 14 shows an alternative to the specific timing required by the limitation.

II.     The "Short Transitions" Limitation

The "short transitions" limitation reads: "transition times which are short relative to the on-state and off-state times of the controlled rectifiers," which the Court construed to mean: "the sum of all transition times totals less than 20% of the overall on-state and off-state times of the controlled rectifiers." Docket No. 4 at 20. The R&R denied Vicor's motion for summary judgment that SynQor cannot rely on the doctrine of equivalents to accuse certain products with transition times up to 27%. *See* Docket No. 366 at 41; Docket No. 374 at 7. In its objections, Vicor briefly identifies the three arguments it raised in its motion and argues that the R&R erred in not agreeing with those arguments. Docket No. 370 at 7–8.

Taking those arguments in turn, Vicor first states that allowing a doctrine of equivalents analysis would "vitiate the specific, 20% limitation" of the claim construction. But Vicor has

never substantively addressed the caselaw holding that doctrine of equivalents can apply to numerical ranges in similar situations. *See, e.g., Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d 1151, 1170–71 (Fed. Cir. 2012) (explaining that "the doctrine of equivalents is not foreclosed with respect to claimed ranges" and concluding that 85% was "fairly characterized as an insubstantial change," falling within the doctrine of equivalents, where claims had been construed to literally mean "at least 90%").

Vicor's second and third arguments are that SynQor disavowed "converters with transition times greater than 20%" during claim construction and before the patent office. Docket No. 370 at 7–8. But disavowal is a high bar—it requires "a clear and unmistakable surrender of subject matter." *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1326 (Fed. Cir. 2003) (citations omitted). Here, during claim construction, SynQor provided an expert declaration stating that Vicor-accused products with up to 26% transition time infringes under the doctrine of equivalents, undercutting Vicor's argument that SynQor disclaimed products with transition times greater than 20%. R&R at 81. At the patent office, SynQor relied on the 20% transition time construction to distinguish prior art that had significantly longer transition times, for example, a prior art reference that had a total transition time of about 50% of the overall on-state and off-state times. Docket No. 366 at 80, 86–87; Docket No. 374 at 8. In sum, Vicor fails to show SynQor clearly and mistakenly disavowed everything above 20% or attempted to distinguish anything in the range of the accused products (*i.e.*, up to 27%).

## CONCLUSION

The Court is of the opinion the findings and conclusions of the Magistrate Judge are correct, and the objections are without merit as to the ultimate findings of the Magistrate Judge. The Court

hereby **ADOPTS** the Report of the United States Magistrate Judge (Docket No. 366) as the findings and conclusions of this Court.  Accordingly, it is hereby

**ORDERED** that Vicor's Motion for Summary Judgment of Non-infringement (Docket No. 334) is **DENIED**, and Vicor's objections (Docket No. 370) are **OVERRULED**.  It is further

**ORDERED** that Vicor shall file a **four-page** claim construction brief regarding the "in synchronization" dispute no later than **seven** days from the date of this order, and SynQor shall file a **four-page** response **seven** days later.  As part of the briefing, the parties should address all evidence and disputes concerning this term, including the "process" vs. "instant" dispute (*see, e.g.*, Docket No. 340 at 2–5 and Docket No. 337 at 6–8) and Vicor's argument that "events at the boundaries do not occur 'in the course' of the transition period" (*see* Docket No. 370 at 5), to the extent the parties characterize that issue as a claim construction dispute.

IT IS SO ORDERED.

**SIGNED this 11th day of August, 2022.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE