**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **SYNQOR, INC.** | § | |
| **Plaintiff** | § | |
| | § | |
| **VS.** | § | **Case No. 2:14-CV-287-RWS-JBB** |
| | § | |
| **VICOR CORPORATION** | § | |
| **Defendant** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. § 636**.** The following motion is before the Court:

> **SynQor's Motion for Summary Judgment on Vicor's Invalidity Defenses Due to Estoppel (Dkt. No. 376).**

The Court, having reviewed the relevant briefing, recommends SynQor's motion be **GRANTED**.

I.   BACKGROUND………………………………………………………………………3

A.  Original '54 case………………………………………………………………...3

B.  Severance into '286 and '287 cases………………………………………………...3

C.  Current '287 case………………………………………………………………...3

D.  SynQor's Motion for Summary Judgment………………………………………4

II.  LEGAL STANDARD………………………………………………………………5

III. MATERIAL FACTS………………………………………………………………6

A.  Vicor's disclosed Grounds of Invalidity…………………………..………………6

B.  Vicor's inter partes reexaminations……………………………………………8

IV. DISCUSSION…………………………………………………………………12

A.  Collateral estoppel………………………………………………………………..12

B.  Analysis………………………………………………………………………...15

   1.  Parties' assertions, generally……………………………………………15

   2.  Whether statutory collateral estoppel applies to Grounds of Invalidity #4, #10, and #14..16

   a.  Applicable law…………………………………………………………..16

   b.  Discussion……………………………………………………………17

   3.  Whether common law collateral estoppel in inter partes reexamination extends to preclude defenses in district court proceedings…………………………………………..20

   4.  Whether common law collateral estoppel applies to Grounds of Invalidity #4, #10, and #14 under the relevant factors for issue preclusion………………………………………24

   a.  Applicable law…………………………………………………………..24

   b.  Discussion…………………………………………….…………………27

V.  RECOMMENDATION………………………………………………………………37

I.     **BACKGROUND**[1]

A.     **Original '54 case**

This litigation began with a complaint filed by SynQor, Inc. ("SynQor") in January of 2011, asserting claims of patent infringement against three defendants—Vicor Corp. ("Vicor"), Ericsson, Inc. ("Ericsson"), and Cisco Systems, Inc. ("Cisco"). Cause No. 2:11-cv-54 ("'54 case"). SynQor and Ericsson quickly settled, and SynQor filed an amended complaint shortly thereafter. In the '54 case, SynQor alleged, among other things, Vicor infringes the patents at issue when it makes, imports, uses, promotes, offers to sell, and/or sells unregulated and/or semi-regulated bus converters used in intermediate bus architecture power supply systems. According to SynQor, Vicor targets products to customers, such as computer and telecommunications equipment manufacturers, including Cisco, that sell and ship products all over the world.

B.     **Severance into '286 and '287 cases**

In early 2014, SynQor's claims against Vicor and Cisco were severed into two newly-created cases—Cause No. 2:14-cv-286 (against Cisco) ("'286 case") and Cause No. 2:14-cv-287 (against Vicor) ("'287 case" or "current case"). In the current '287 case against Vicor, SynQor originally alleged Vicor indirectly infringes four patents relating to unregulated bus converter technology—United States Patent Nos. 7,072,190 (the '190 patent), 7,564,702 (the '702 patent), 8,023,290 (the '290 patent) and 7,272,021 (the '021 patent). Dkt. No. 2, ¶¶ 35-58.

C.     **Current '287 case**

In 2016, shortly before trial in the current case, Vicor sought and obtained a stay of SynQor's claims pending the final resolution of inter partes reexaminations Vicor had filed in

---

[1] This case has a lengthy and complicated procedural history, as more fully outlined in the May 25, 2022 Report and Recommendation on Defendant Vicor Corporation's Motion for Summary Judgment that Circuits Containing Vicor Bus Converters Do Not Infringe the Asserted SynQor Patent Claims and Request for Hearing (Dkt. No. 366), which was adopted by District Judge Schroeder on August 11, 2022. *See* Dkt. No. 515.

2011 and 2012 with the Patent Office. Well over five years later, the Court lifted the stay. Dkt. No. 311. Post-reexamination, the asserted claims are claim 2 of the '190 patent and claims 55 and 67 of the '702 patent.[2] *See* Dkt. No. 548 (Joint final Pre-Trial Order) at 1. The pretrial conference is set before the undersigned October 6, 2022, with jury selection and trial scheduled October 17, 2022 before District Judge Schroeder.

### D.    SynQor's motion for summary judgment

SynQor asserts Vicor has already conceded that reexamination estoppel applies to the '702 patent and bars Vicor from asserting its anticipation and obviousness defenses. Dkt. No. 376 at 1. In its current motion, SynQor "moves for summary judgment to enforce the remaining reexamination estoppels to which Vicor is subject, concerning the '190 patent." *Id.* Specifically, SynQor asserts Vicor is estopped from contending that claim 2[3] of the '190 patent is invalid as obvious under 35 U.S.C. § 103 on the following grounds: (1) Vicor's disclosed Ground of Invalidity # 4 (Pressman, Cobos); (2) Vicor's disclosed Ground of Invalidity # 10 (Steigerwald '090, Steigerwald '539,Cobos, Pressman); and (3) Vicor's disclosed Ground of Invalidity # 14 (Pressman, Cobos, Narveson, Niemela). *Id.* at 2.

SynQor asserts these grounds of invalidity are based on combinations of references that Vicor chose to litigate in its inter partes reexaminations before the Patent Office. *Id.* at 1.

---

[2] The asserted claims of the '190 and '702 patents are directed to power converter systems incorporating an isolated stage/converter with particular characteristics that is used to power two or more non-isolated, regulated stages/converters in what is now known as an intermediate bus architecture ("IBA"). *See, e.g.*, '190 patent, claim 2; '702 patent, claim 55; April 11, 2014, Infringement Expert Report of Steven B. Leeb, Ph.D. ("Leeb Rep."), ¶¶ 51, 53; May 2, 2014, First Suppl. Infringement Expert Report of Steven B. Leeb, Ph.D. ("Suppl. Leeb Rep."), ¶¶ 51, 53. According to SynQor, the isolated converters used in the claimed IBA systems are known today as bus converters, and the two or more non-isolated, regulated converters are now commonly known as point-of-load converters.

[3] In its motion, SynQor further asserts Vicor is estopped from asserting that claims 19 and 31 of the '190 patent are invalid as obvious on these grounds. *See* Dkt. No. 376 at 2. SynQor has since dropped claims 19 and 31 from this case and Vicor makes no arguments specific to claims 19 and 31; therefore, this Report and Recommendation refers only to claim 2 of the '190 patent.

According to SynQor, in those reexaminations, the Patent Office rejected Vicor's arguments, based on factual determinations that are now final. *Id.* SynQor contends the reexamination statute—as well as common law collateral estoppel or issue preclusion—provide that factual determinations made during reexamination carry the force of estoppel against the party who requested reexamination; thus, SynQor asserts the Patent Office's factual determinations, which Vicor is estopped from challenging, are fatal to Vicor's disclosed Grounds of Invalidity # 4, # 10, and # 14. *Id.*

## II.    LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential

elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News*, *Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

## III.    MATERIAL FACTS

### A.    Vicor's disclosed Grounds of Invalidity

### 1.    Generally

On December 22, 2011, Vicor served its invalidity contentions, which disclosed Vicor's invalidity theories. Dkt. No. 376-2. The Court's April 24, 2014 Amended Order Focusing Patent Claims and Prior Art required Vicor to narrow its theories and identify fifteen grounds (*i.e.*, single references, or combinations of references) that Vicor could potentially use at trial to show that SynQor's claims are invalid as either anticipated or obvious. *See* Dkt. No. 32. As part of its fifteen grounds, Vicor disclosed the following:

> 4. Pressman, Switching and Linear Power Supply, Power Converter Design, Hayden Book Company, Inc., 1977 ("Pressman"); Cobos et al., Low Output Voltage DC/DC Conversion, 20th Int'l Conf. on Industrial Electronics, Control and Instrumentation, Sept. 5-9, 1994 (IECON'94), vol. 3, pp. 1676-81 ("Cobos")
>
> 10. Steigerwald '090; Steigerwald '539; Cobos; Pressman
>
> 14. Pressman; Cobos; Narveson, How Many Isolated DC-DC's Do You Really Need?, Proc. 11th Annual Applied Power Electronics Conference and Exposition, March 3-7, 1996 (APEC '96), vol. 2, pp. 692-95 ("Narveson"); Niemela

Dkt. No. 376-3 (Vicor Corporation's Disclosure of Prior Art References).

2.    **Specifically**

    a.    **Ground of Invalidity # 10**

Vicor's Ground of Invalidity # 10 is an obviousness ground (under 35 U.S.C. § 103) based on the combination of four references, two of which are Steigerwald '090 and Cobos. In particular, Steigerwald '090 and Cobos each disclose power-converter systems, and Vicor contends that a skilled artisan would find it obvious to combine these two systems. SynQor argues—to the contrary—that a skilled artisan would not combine Steigerwald '090 and Cobos because they use incompatible frequencies. *See*, *e.g.,* Dkt. No. 376-4 (May 2014 Leeb Validity Rept.) ¶¶ 1031–1036 ("A person of ordinary skill would not have a reason or motivation to combine the low frequency converters of Cobos with the high frequency converters of Steigerwald.").

    b.    **Grounds of Invalidity # 4 and # 14**

The claims of the '190 patent require a "non-regulating isolation stage" or "an isolated output without regulation." *See, e.g.*, '190 Patent at claim 2. Vicor's Grounds of Invalidity # 4 and # 14 are obviousness grounds (under 35 U.S.C. § 103) based on combinations that include the following two references: Cobos and Pressman. SynQor asserts these grounds rely on the Cobos reference to disclose a "non-regulating isolation stage" or "an isolated output without regulation." According to SynQor, Vicor contends that: (1) Pressman discloses a two-stage power converter system, (2) Cobos discloses a single stage power converter system, and (3) a skilled artisan would combine them by removing the first stage of Pressman, and substituting in its place the stage from Cobos. Dkt. No. 376-5 (Apr. 2014 Giesselmann Invalidity Rept.) ¶¶ 701–712 (stating, among other things, "[a] person of ordinary skill would have found it obvious to use the pre-regulator and isolation stage of Fig. 9 of Cobos . . . as the pre-regulator and isolation stage in

Fig. 3–4(B) of Pressman, as visually depicted in the following diagram. . . "). SynQor contends the isolation stage in Cobos does not meet the requirement to be "non-regulating;" rather, Cobos discloses a *regulated* isolation stage. Dkt. No. 376 at 5 (citing Dkt. No. 376-4 at ¶ 835 ("Defendants' experts argue that a person of ordinary skill would have substituted Fig. 9 of Cobos . . . as the pre-regulator and isolation stage in Fig. 3-4(B) of Pressman. If they did so, however, they would have a regulated converter. They would not have a non-regulated isolation stage.") (citations omitted by SynQor)).

Vicor asserts SynQor misstates Vicor's Grounds of Invalidity # 4 and # 14 for these claim limitations. Dkt. No. 440 at 1. Whereas SynQor alleges that Grounds of Invalidity # 4 and # 14 use Cobos to disclose the non-regulating stage "to setup the argument that the PTAB held that Cobos discloses a regulated isolation stage," Vicor states it does not rely on Cobos to disclose a non-regulating isolation stage. *Id.* Vicor further explains as follows:

> Vicor relies on ***Pressman*** to supply the non-regulating isolation stage. As Vicor's expert opined for the combination of Pressman and Cobos, "Pressman discloses a non-regulating isolation stage." Ex. 1 (Giesselmann 2014.04.11 Report, Ex. 12, at 1c). "Pressman meets each of the limitations of those claims" except for one limitation related to "synchronization." Ex. 1 ¶ 701. Vicor does not rely on Cobos to disclose a non-regulating isolation stage. *See*, *e.g.*, *id.* ¶¶ 701-2. The reexaminations cited by SynQor do not address these facts.

*Id.* (emphasis original).

### B.    Vicor's inter partes reexaminations

### 1.    Patent Office's April 20, 2015 Decision in the reexamination of the '702 patent

Vicor filed a request for inter partes reexamination of the '702 patent on December 14, 2011. Dkt. No. 376-6. A fuller description of the reexamination's history can be found in *Vicor Corp. v. SynQor, Inc.*, 706 Fed. Appx. 673 (Fed. Cir. 2017) ("*SynQor I*"). SynQor's motion

focuses on a particular decision in that reexamination: the Patent Office's April 20, 2015 Decision. Dkt. No. 376-7.

In the reexamination of the '702 patent, the Examiner in the Patent Office who initially reviewed Vicor's request found the challenged claims of the '702 patent invalid, and SynQor appealed that decision to the Patent Trial and Appeal Board ("PTAB"), the highest appellate tribunal of the Patent Office. On April 20, 2015, the PTAB handed down a decision reversing the Examiner. According to SynQor, that decision made two significant factual determinations. Dkt. No. 376 at 6.

First, the PTAB determined that Cobos does not disclose a non-regulating isolation stage; rather, Cobos discloses a regulated isolation stage. Dkt. No 376-7 at 7–12. According to SynQor, in the reexamination of the '702 patent, Vicor asserted grounds of invalidity based on the combination of Pressman and Cobos, relying on Cobos to provide a non-regulating isolation stage. SynQor asserts the PTAB rejected Vicor's challenges because it concluded that Cobos instead discloses a regulated isolation stage. SynQor further asserts the PTAB reasoned that while "Cobos [] is not explicit as to whether there is a regulated output" in the specific figure of Cobos that Vicor cited, "Figure 6(b)," Cobos states that the output voltages of the power converters described in its figures are generally regulated ("[w]e find it instructive that the output voltage in Cobos is generally regulated to 3.3 volts"), and the PTAB further credited the testimony of SynQor's witness, Dr. Schlecht, who demonstrated that Cobos is regulated. *Id*. at 11; *see also* Dkt. No. 376-8 (Cobos) at 1676–80.

Second, the PTAB determined that a skilled artisan would not combine Steigerwald '090 and Cobos. Dkt. No 376-7 at 15–29. In the reexamination of the '702 patent, Vicor asserted grounds of invalidity based on the combination of Steigerwald '090 and Cobos. According to

SynQor, the PTAB rejected Vicor's challenges because it concluded that a skilled artisan would not combine these references due to their frequency incompatibilities. *Id.* at 21 ("We agree with the Patent Owner that there are incompatibilities in frequency between the references.").

The PTAB's Decision was affirmed on appeal by the Federal Circuit in *SynQor I*, 706 Fed. Appx. 673.

**2.    Patent Office's May 2, 2016 Decision in the reexamination of the '290 patent**

Vicor filed its request for inter partes reexamination of the '290 patent on December 21, 2011. Dkt. No. 376-9. A fuller description of the reexamination's history can be found in *Vicor Corp. v. SynQor, Inc.*, 869 F.3d 1309 (Fed. Cir. 2017) ("*SynQor II*"). SynQor's motion focuses on a particular decision in that reexamination: the Patent Office's May 2, 2016 Decision. Dkt. No. 376-10.

In the reexamination of the '290 patent, the Examiner who initially reviewed Vicor's request found the challenged claims of the '290 patent valid, and Vicor appealed that decision to the PTAB. On May 2, 2016, the PTAB handed down a decision affirming the Examiner.

In that decision, the PTAB made the factual determination that a skilled artisan would not combine Steigerwald '090 and Cobos. *Id.* at 6–13. According to SynQor, Vicor had asserted grounds of invalidity based on combinations of Steigerwald '090 and Cobos, and the PTAB rejected Vicor's challenges because it determined—as it had determined in the reexamination of the '702 patent—that a skilled artisan would not combine these references due to their frequency incompatibilities. *Id.* at 10–12 (crediting SynQor's argument that the references "are functionally constrained to particular frequency ranges that are incompatible with each other").

On appeal, the Federal Circuit affirmed the PTAB's rejection of Vicor's challenges based on the combination of Steigerwald '090 and Cobos. *See SynQor II*, 869 F.3d at 1320.

3.     **Federal Circuit's application of common law collateral estoppel in the reexamination of the '190 patent**

Vicor filed its request for inter partes reexamination of the '190 patent on August 5, 2011. Dkt. No. 376-11. A fuller description of the reexamination's history can be found in *SynQor, Inc. v. Vicor Corp.*, 988 F.3d 1341 (Fed. Cir. 2021) ("*SynQor IV*").[4] Vicor's request for reexamination for the '190 patent remains pending at the PTO. SynQor's motion focuses on a particular decision in the reexamination of the '190 patent: the Federal Circuit Court of Appeal's decision in *SynQor IV*, which applied common law collateral estoppel from one inter partes reexamination to another based on the same two Patent Office decisions at issue here.

According to SynQor, in the reexamination of the '190 patent, Vicor raised grounds of invalidity based on combinations of Steigerwald '090 and Cobos—just as Vicor had done in the reexaminations of the '702 and '290 patents. In those prior reexaminations, the PTAB had rejected Vicor's challenges, concluding that a skilled artisan would not combine Steigerwald '090 and Cobos due to their frequency incompatibilities. However, this time, the PTAB reached the opposite conclusion—in a decision issued on May 2, 2016, it found that a skilled artisan would combine Steigerwald '090 and Cobos. *See* Dkt. No. 376-12 at 8–9. SynQor filed an appeal to the Federal Circuit, arguing that collateral estoppel—based on the PTAB's prior two decisions— blocked the PTAB from reaching this conclusion.

In its *SynQor IV* decision, handed down on February 22, 2021, the Federal Circuit agreed with SynQor. Holding that "common law collateral estoppel applies to inter partes reexaminations," the Federal Circuit vacated the PTAB's decision as to claims 1-19, 28, ad 31

---

[4] SynQor references the Federal Circuit's February 22, 2021 decision in *SynQor, Inc. v. Vicor Corp.*, 988 F.3d 1341 (Fed. Cir. 2021) as "*SynQor III*." However, in its recent June 17, 2022 decision in *SynQor, Inc. v. Vicor Corp.*, No. 2020-1259, 2022 WL 2187567, at *1 (Fed. Cir. June 17, 2022), the Federal Circuit refers to its 2021 decision as "*SynQor IV*." Therefore, for purposes of this Report and Recommendation, the Court refers to the 2021 decision as *SynQor IV*.

because "decisions the Board made in previous reexamination proceedings preclude finding claims 1-19, 28, ad 31 obvious based on the grounds relied upon by the Board." *SynQor IV*, 988 F.3d at 1344-45, 1353. The Federal Circuit vacated the PTAB's decision on claims 1-19, 28, and 31 and remanded for the Board to apply collateral estoppel. *Id*. at 1356.

SynQor argues the Federal Circuit in *SynQor IV* held that issue preclusion applies from one inter partes reexamination to another and that each element for common law collateral estoppel was met, finding as follows: (1) "the issues are identical between the '190 patent reexamination and the '290 and '702 patent reexaminations," namely "whether Cobos' and Steigerwald's circuits are mutually incompatible because of their switching frequency;" (2) "[t]his issue was litigated and decided in both the '290 and '702 patent reexaminations;" and (3) "[t]he [PTAB's] findings that an artisan would not combine Steigerwald and Cobos because of their operating frequency incompatibilities were essential to judgments holding the '290 and '702 patents not obvious." Dkt. No. 376 at 8 (citing *SynQor IV*, 988 F.3d at 1353-54 (internal quotation marks and citations omitted by SynQor)).

## IV. DISCUSSION

### A. Collateral estoppel

### 1. Pre-AIA statutory estoppel provisions[5]

In order to further encourage parties to use the PTO's patent reexamination procedure, Congress enacted in 1999 inter partes reexamination "as an option to the existing ex parte reexamination proceedings." *In re Affinity Labs of Texas, LLC*, 856 F.3d 883, 889–90 (Fed. Cir.

---

[5] When Congress enacted the AIA, it replaced the extant statutory provisions for inter partes reexamination with provisions for a new type of proceeding, inter partes review. *In re Affinity Labs of Texas, LLC*, 856 F.3d 883, 886 n. 1 (Fed. Cir. 2017). In doing so, Congress amended the provisions of 35 U.S.C. § 317 to apply only to inter partes review proceedings, which, by definition, are filed post-AIA. *Id.* Congress also specified that the pre-AIA provisions of the inter partes reexamination statute remain applicable to inter partes reexamination proceedings. *Id.*

2017) (quoting 145 Cong. Rec. 29,972 (1999)). With inter partes reexamination, Congress hoped, as it had when it enacted ex parte reexamination years earlier, to "reduce litigation in district courts and make reexamination a viable, less costly alternative to patent litigation." *Id.* at 890 (quoting 145 Cong. Rec. 26,984 (1999) (statement of Sen. Hatch)). In contrast to ex parte reexamination, Congress specifically provided the third party reexamination requester the opportunity to fully participate in the inter partes proceeding. *Id.* (generally citing 35 U.S.C. § 311 *et seq.* (pre-AIA)). In addition to allowing requester participation in inter partes reexamination, Congress enacted measures in the inter partes reexamination statute to "prevent abusive reexamination requests, including broad estoppel provisions." *Id.* (quoting 145 Cong. Rec. 26,984 (1999) (statement of Sen. Hatch)).

The core estoppel provisions come from 35 U.S.C. §§ 315(c), 317(b) (2006). *SynQor IV*, 988 F.3d at 1348. Section 315 provides as follows:

> A third-party requester whose request for an inter partes reexamination results in an order under section 313 is estopped from asserting at a later time, in any civil action arising in whole or in part under section 1338 of title 28, the invalidity of any *claim* finally determined to be valid and patentable on any ground which the third-party requester raised or could have raised during the inter partes reexamination proceedings.

*Affinity Labs*, 856 F.3d at 892 (quoting 35 U.S.C. § 315(c) (pre-AIA) (emphasis added in *Affinity Labs*)). Section 317 (the pre-AIA version), entitled "Inter partes reexamination prohibited," limits an inter partes reexamination requester's ability to continually attack the validity of a patent's claims by using the inter partes reexamination process. *Id.* at 890.

Section 317(a), for example, generally prohibits an inter partes reexamination requester, whose reexamination request has been granted and the proceeding on that patent is pending, from filing "a subsequent request for inter partes reexamination of the patent" until the first inter partes reexamination has been completed and a reexamination certificate issues. Section 317(b) bars a

party from using the inter partes reexamination process after a final decision has been entered against that party in a civil action, finding "that the party has not sustained its burden of proving the invalidity of any patent claim in suit." *Id*. (quoting 35 U.S.C. § 317(b) (pre-AIA)). As with section 317(b), the statute in section 315(c) similarly estops the requester from challenging again, in a different venue, the validity of claims that were actually decided against the requester. *Id.* at 892 ("Nothing in section 315(c), however, estops the requester from challenging at a later time the validity of a claim that was not previously requested pursuant to section 311 and reexamined pursuant to section 313.").

Uncodified § 4607 of the session law that enacted inter partes reexamination, the Optional Inter Partes Reexamination Procedure Act of 1999, "provides for even more sweeping issue preclusion." *SynQor IV*, 988 F.3d at 1348. Section 4607 estops "[a]ny party who requests an inter partes reexamination" from "challenging at a later time, *in any civil action*, any fact determined during the process of such reexamination, except with respect to a fact determination later proved to be erroneous based on information unavailable at the time of the inter partes reexamination decision." *Id.* (quoting Optional Inter Partes Reexamination Procedure Act of 1999, Pub. L. No. 106-113, 113 Stat. 1501A-567, 1501A-571, sec. 4607 (emphasis added in *SynQor IV*)).

**2.  Common law collateral estoppel or issue preclusion**

Under the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Gossage v. Merit Sys. Prot. Bd*., 861 Fed. Appx. 426, 430 (Fed. Cir. 2021) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). "It is well established that collateral estoppel, also known as issue preclusion, applies in the administrative context." *Id.* (quoting *SynQor IV*, 988 F.3d at 1347

(quoting *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018))). "Thus, administrative decisions have preclusive effect '[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.'" *Id.* (quoting *SynQor IV*, 988 F.3d at 1347 (quoting *B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 148–49, 135 S.Ct. 1293, 191 L.Ed.2d 222 (2015))). As the Supreme Court has explained, the general rule is:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*B&B Hardware*, 135 S. Ct. at 1303 (quoting Restatement (Second) of Judgments § 27, p. 250 (1980)). Issue preclusion can apply in a district court case where the earlier "action" was an inter partes review proceeding before the PTAB. *EmeraChem Holdings, LLC v. Volkswagen Grp. of Am., Inc.*, Civil Action No. 3:14-CV-132, 2021 WL 5507741, at *8 (E.D. Tenn. Nov. 24, 2021) (citing *Papst Licensing GmbH & Co. KG v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1250-51 (Fed. Cir. 2019); also citing *SynQor IV*, 988 F.3d at 1346-47 (extending issue preclusion between inter partes reexaminations)).

## B.  Analysis

### 1.  Parties' assertions, generally

In its motion, SynQor asserts as follows:

> The premise of the five-and-a-half year stay that was entered in this litigation was that the reexaminations would carry "the force of estoppel" against Vicor—by choosing to litigate certain issues in the Patent Office, Vicor would be blocked from re-litigating the same issues in the district court, which would simplify the case. That is now true—Vicor is estopped from asserting that the '190 patent is invalid on three grounds.

Dkt. No. 376 at 8-9. Specifically, SynQor asserts both (1) statutory uncodified "fact" estoppel under § 4607 of the session law that enacted inter partes reexamination and (2) common law collateral estoppel (or issue preclusion) bar Vicor from challenging claim 2 of the '190 patent on Grounds of Invalidity # 4, # 10, and # 14.

In its response, Vicor first asserts statutory estoppel does not apply to the '190 patent because the Federal Circuit held in *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 648 (Fed. Cir. 2011) that estoppel applies when all appeals have terminated, and there has been no final determination in the inter partes reexamination of the '190 patent. Dkt. No. 440 at 2-4; *see also* Dkt. No. 497 at 2. Vicor further asserts common law collateral estoppel does not apply here, noting "SynQor fails to cite a Supreme Court decision or other authority that extends common law estoppel in *inter partes* reexamination to preclude defenses in district court proceedings." Dkt. No. 440 at 4. According to Vicor, even if common law collateral estoppel is available, the Court should decline SynQor's invitation to apply it here because, among other things, the issues are not identical and were not fully litigated in the '702 and '290 reexaminations. *Id*. at 4-6.

**2.    Whether statutory collateral estoppel applies to Grounds of Invalidity # 4, # 10, and # 14**

**a.    Applicable law**

In *Bettcher*, the Federal Circuit Court of Appeals considered when the estoppel under pre-AIA version of 35 U.S.C. § 315(c) attaches. *Bettcher*, 661 F.3d at 643. The defendant, seeking a new trial on obviousness, argued on appeal that the district court wrongly interpreted § 315 in holding that its estoppel provision applied at the conclusion of examination when the examiner issued the Right of Appeal Notice. *Bettcher*, 661 F.3d at 642. The plaintiff argued, among other things, that related regulations proved that right of appeal notices are final determinations, and the "fact estoppel" provision of the 1999 act creating inter partes reexaminations and its legislative

16

history supported the plaintiff's position that § 315 is triggered when examination is complete. *Id.* at 643. The Federal Circuit held that §§ 315, 317, and the uncodified "fact" estoppel provision in § 4607, do not attach until all appeal rights are exhausted. *Id*. at 642-43, 646, 648.

### b. Discussion

SynQor relies on the uncodified "fact" estoppel of the 1999 act establishing inter partes reexamination proceedings. According to SynQor, § 4607 provides that factual determinations that are made in inter partes reexamination carry the force of estoppel in district court litigation. Section 4607 specifically provides as follows:

> Any party who requests an inter partes reexamination under section 311 of title 35, United States Code, is estopped from challenging at a later time, in any civil action, any fact determined during the process of such reexamination, except with respect to a fact determination later proved to be erroneous based on information unavailable at the time of the inter partes reexamination decision.

Dkt. No. 376 at 9 (quoting Pub. L. No. 106-113, § 4607, 113 Stat. 1501 (1999)). According to SynQor, each statutory condition is met here.

Vicor contends no statutory estoppel applies here. Noting SynQor does not, and cannot, rely on the core estoppel provisions from core §§ 315(c) and 317(b), because they require "***final*** determinations involving the ***same*** patent," Vicor asserts "SynQor resorts to uncodified Section 4607 to seek unprecedented relief: estoppel in a district court for one patent (the '190 patent) based on the results from reexaminations of different patents (the '702 and '290 patents)." Dkt. No. 440 at 2 (emphasis original). Relying on 5 Moy's Walker on Patents and *Bettcher*, 661 F.3d at 648, Vicor argues § "4607 must be considered in view of the language of the statutory framework and history," which require finality of the proceedings involving the same patent, and it would be "non-sensical to construe Section 4607 – a note to section 315(c) intended to be

narrower than 315(c) – to give effect to estoppel beyond those conferred by section 315(c)." *Id.* at 3-4.

Addressing Vicor's reliance on Moy's Walker, the December 2020 update of 5 Moy's Walker on Patents asserts that § 4607 of the 1999 Act contained a provision, to be left uncodified, which set out an interpretation of the codified provision that "was much narrower than the codified language would suggest." Inter partes reexamination under the 1999 amendments, 5 Moy's Walker on Patents § 16:66 (4th ed.). In a footnote, Moy's Walker noted that very few secondary sources had analyzed this uncodified provision and that some had viewed the provisions in § 4607 of the 1999 Act "as simply additive to the estoppel set out in codified sections 315 and 317," though Moy's Walker disagreed with that view. *Id.* at n. 33 (asserting the better view is that the factual section of § 4607 "would almost certainly be subsumed under the more comprehensive estoppel described in the codified provisions").

The Court is not convinced, as suggested by Moy's Walker on Patents and urged by Vicor, that it should construe § 4607 as a mere "note to section 315(c) intended to be narrower than 315(c)." Dkt. No. 440 at 4. In the 2021 *SynQor IV* opinion, the Federal Circuit specifically noted § 4607 is "more sweeping" than the core estoppel provisions:

> The core estoppel provisions come from 35 U.S.C. §§ 315(c), 317(b) (2006). Section 315(c) prevents third-parties who successfully requested inter partes reexamination, when sued for patent infringement under 28 U.S.C. § 1338, from asserting "the invalidity of any claim finally determined to be valid and patentable on any ground which the third-party requester raised or could have raised during the inter partes reexamination proceedings." Section 317(b) provides for the converse of § 315(c), estopping "further validity challenges—using inter partes reexamination—to the specific claims the validity of which had been previously resolved against the requester" in district court or in a prior inter partes reexamination. *Affinity Labs*, 856 F.3d at 893. The provision implements a further codification of common law claim preclusion principles.
>
> Uncodified § 4607 of the session law that enacted inter partes reexamination, the Optional Inter Partes Reexamination Procedure Act of 1999, provides for even

more sweeping issue preclusion. Section 4607 estops "[a]ny party who requests an inter partes reexamination" from "challenging at a later time, *in any civil action*, any fact determined during the process of such reexamination, except with respect to a fact determination later proved to be erroneous based on information unavailable at the time of the inter partes reexamination decision." Optional Inter Partes Reexamination Procedure Act of 1999, Pub. L. No. 106-113, 113 Stat. 1501A-567, 1501A-571, sec. 4607 (emphasis added). Perhaps recognizing the breadth of this provision, Congress included a severability clause in this section. *Id.*

Admittedly, this provision does not facially establish the applicability of this preclusive factfinding to future inter partes reexaminations. But it is unlikely that a Congress amenable to precluding federal courts from considering fact questions traditionally submitted to a jury would object to those same conclusions binding the administrative agency that resolved the factual questions. That Congress failed to expressly apply this provision to "any civil action or subsequent reexamination" makes no difference when "courts may take it as given that Congress has legislated with the expectation that the principle [of issue preclusion] will apply except when a statutory purpose to the contrary is evident." *Astoria* [*Fed. Sav. And Loan Ass'n v. Solimino*, 501 U.S. 104, 108, 111 S.Ct. 2166 (1991)].

*SynQor IV*, 988 F.3d at 1348. Thus, as SynQor notes, the Federal Circuit in *SynQor IV* "reviewed the statutory scheme and explained that Congress had enacted three distinct provisions— '§§ 315, 317, and 4607'—with three distinct estoppels, each having different conditions and effects." Dkt. No. 461 at 1. Vicor's argument that Section 4607 must contain the same requirements of Section § 315(c) is not well taken. *See* Dkt. No. 497 at 2-4. However, *SynQor IV* does not definitively address whether § 4607 requires the same finality requirement as §§ 315 and 317, which controls this dispute.

The Federal Circuit stated in *Bettcher* that "the legislative history of the fact estoppel proves that it applies only after all appeal rights are exhausted." *Bettcher*, 661 F.3d at 648. SynQor claims in a footnote that factual determinations at issue here have been affirmed by the Federal Circuit on appeal in other reexaminations (referring to the '702 and '290 reexaminations and the decisions in *SynQor I* and *SynQor II*). Dkt. No. 461 at 1, n. 1. But that does not sufficiently address *Bettcher's* broad statement that "estoppel arises after a final decision in the inter partes

reexamination or a final decision in any appeal of such reexamination," which could prevent applying estoppel from the pending '190 reexamination. *See Bettcher*, 661 F.3d at 646. SynQor seems to concede that estoppel under the uncodified statutory provision is unavailable because no final determination has issued for the reexamination of the '190 patent, stating in its Motions *in Limine* with regard to claim 2 of the '190 patent that "the only reason Vicor is not *statutorily* estopped from challenging the validity of this claim now is because Vicor is appealing (for the third time) the Patent Office's final decision affirming this claim's patentability." Dkt. No. 538 at 12 (emphasis original).

Because of the open question of whether a final factual determination in a reexamination dealing with one patent can be applied to the same issue in a district court case dealing with a different patent, and because the Court finds common law collateral estoppel applies here as described below, the Court declines to apply statutory collateral estoppel under § 4607.

3.    **Whether common law collateral estoppel in inter partes reexamination extends to preclude defenses in district court proceedings**

Vicor initially cites *Fresenius USA, Inc. v. Baxter Int'l, Inc*., 721 F.3d 1330 (Fed. Cir. 2013) for the proposition that if a patent claim is finally determined to be unpatentable in reexamination, it can no longer be asserted by the patent owner, "not because of collateral estoppel," but by operation of "statute." Dkt. No. 440 at 4 (citing *Fresenius*, 721 F.3d at 1344 ("[A] final, affirmed PTO decision determining invalidity . . . is binding not because of collateral estoppel, but because Congress has expressly delegated reexamination authority to the PTO under a statute requiring the PTO to cancel rejected claims, and cancellation extinguishes the underlying basis for suits based on the patent.")). Vicor further asserts SynQor fails to cite any authority that extends common law collateral estoppel to inter partes reexaminations to preclude defenses in district court proceedings. *Id.*

20

Vicor's reliance on *Fresenius* is unavailing. "*Fresenius* concerned an entirely different issue involving res judicata from a 'final judgment.'" *VirnetX Inc. v. Apple Inc*., 931 F.3d 1363, 1376 (Fed. Cir. 2019). The Federal Circuit in *VirnetX* explained that *Fresenius*'s analysis of a "final judgment" for purposes of res judicata did not instruct the court's understanding of a "final decision" for purposes of § 317(b) estoppel. *Id*. Similarly here, the Court does not find *Fresenius*'s analysis of a "final judgment" for purposes of res judicata instructive as to whether the Court should extend common law collateral estoppel to preclude Vicor from asserting Grounds of Invalidity # 4, # 10, and # 14 in this case based on decisions in the inter partes reexaminations.

Turning to that issue, the Supreme Court has held that a final decision in an agency proceeding may preclude issues raised in a subsequent court proceeding. *B&B Hardware, Inc. v. Hargis Indus., Inc*., 575 U.S. 138, 148 (2015) ("[I]ssue preclusion is not limited to those situations in which the same issue is before two courts. Rather, where a single issue is before a court and an administrative agency, preclusion also often applies."). In its surreply, Vicor asserts *B&B Hardware* is distinguishable because it deals with a different framework enacted by Congress in the trademark statute, which specifically provides for the application of common law estoppel principles. Dkt. No. 497 at 2. But Vicor fails to show why that distinction calls for a different result here.

The Federal Circuit has confirmed that this general principle of issue preclusion extends to final written decisions rendered by the PTAB in IPR proceedings. *M2M Sols. LLC v. Sierra Wireless Am., Inc*., Civil Action No. 14-1102-RGA, 2020 WL 7767639, at *4 (D. Del. Dec. 4, 2020), *report and recommendation adopted*, No. 14-CV-01102-RGA, 2021 WL 7441706 (D. Del. Mar. 31, 2021) (citing *Papst Licensing GMBH & Co. KG v. Samsung Elecs. Am., Inc*., 924 F.3d 1243, 1250-1251 (Fed. Cir. 2019) ("[T]he issue preclusion doctrine can apply in this court to the

21

Patent Trial and Appeal Board's decision in an IPR once it becomes final.")); *see  also Oren Techs., LLC v. Proppant Express Invs. LLC*, Civil Action No. 2019-1778, 2021 WL 3120819, at *2 (Fed. Cir. July 23, 2021) (citing *Papst*, 924 F.3d at 1252); *EmeraChem Holdings, LLC v. Volkswagen Grp. of Am., Inc.*, Civil Action No. 3:14-CV-132, 2021 WL 5507741, at *8 (E.D. Tenn. Nov. 24, 2021) (citing *Papst*, 924 F.3d at 1250-51). Vicor fails to persuasively show why estoppel based on reexamination proceedings should have a different scope than IPR proceedings.

What is more, Vicor's argument overlooks that in *SynQor IV* the Federal Circuit specifically looked to the Supreme Court's decision in *B&B Hardware* for guidance to determine whether "categorical reason[s]" exist that inter partes reexamination cannot satisfy the ordinary elements of issue preclusion. *SynQor IV*, 988 F.3d at 1349 (citing *B&B Hardware*, 575 U.S. at 152-53, 135 S.Ct. 1293). Applying the five non-exclusive factors in section 83 of the Restatement (Second) of Judgments to evaluate whether an administrative tribunal's decision meets the "essential elements of adjudication,"[6] the Federal Circuit noted inter partes reexamination "indisputably meets factors one, three, and four." *Id.*

Vicor argued in *SynQor IV*, among other things, that inter partes reexamination cannot satisfy factor two (right to present evidence in support of its contentions and fair opportunity to

---

[6] These factors include:

> [1] Adequate notice to persons who are to be bound by the adjudication ...;
> [2] The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties;
> [3] A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status, or a specific series thereof;
> [4] A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; [and finally, a catch-all,]
> [5] Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions.

*SynQor, Inc v. Vicor Corp.*, 988 F.3d 1341, 1349 (Fed. Cir. 2021) (quoting Restatement (Second) of Judgments § 83(2) (1982)).

rebut evidence by other parties) because inter partes reexamination is an "examinational" or "inquisitorial" proceeding. *Id.* The Federal Circuit disagreed, noting the parties can present and rebut evidence – even expert testimony. *Id.* at 1349-50. Vicor further argued, "as part and parcel of inter partes reexaminations' 'inquisitorial' nature, parties do not have rights to discovery or subpoena power." *Id.* at 1350. The Federal Circuit stated Vicor presented "too rigid a view of the considerations at play in allowing one administrative tribunal to bind itself in later decisions." *Id.* Again, the Federal Circuit cited *B&B Hardware*, noting that to determine whether adequate procedures are present, courts examine "whether the procedures used in the first proceeding were fundamentally poor, cursory, or unfair." *Id*. (quoting *B&B Hardware*, 575 U.S. at 158, 135 S.Ct. 1293). In conclusion, the Federal Circuit held that "[g]iven the statutory estoppel scheme for inter partes reexaminations, the informal procedural safeguards, the nature of the tribunal, and the overall magnitude and complexity of the proceedings, we are unpersuaded that inter partes reexamination procedures are so 'fundamentally poor, cursory, or unfair,' *B & B Hardware*, 575 U.S. at 158, 135 S.Ct. 1293, that the resolution of a factual dispute in a first inter partes reexamination should not collaterally estop the contrary resolution of that dispute in a second reexamination." *Id.* at 1353. Having determined that "the procedural mechanisms used in inter partes reexamination are sufficient to apply collateral estoppel arising from a first reexamination to a second reexamination," *id.* at 1350-51, the Federal Circuit evaluated whether the facts supported issue preclusion under Federal Circuit law, finding they did. *Id*. at 1353-55.

Despite this, Vicor argues "SynQor fails to cite a Supreme Court decision or other authority that extends common law estoppel in *inter partes* reexamination to preclude defenses in district court proceedings." Dkt. No. 440 at 4. However, this argument is unpersuasive as it overlooks that the Federal Circuit in *SynQor IV* only recently held that common law collateral

estoppel applies to inter partes reexaminations. *SynQor IV*, 988 F.3d at 1353. In a footnote, the Federal Circuit noted the inter partes reexamination procedure ended with the passage of the America Invents Act. Pub. L. No. 112-29, 125 Stat. 284 (2011). *Id*. at 1347, n. 2 (stating that the court's holding was "necessarily limited to remaining inter partes reexaminations" and further stating that as of November 2020, only eight appeals and two requests for rehearing from inter partes reexaminations remained pending before the Board).

The Federal Circuit's decision in *SynQor IV* – although applying common law collateral estoppel between inter partes reexaminations – is support for application of common law collateral estoppel in district court based on inter partes reexamination decisions. The Court finds inter partes reexamination decisions can have preclusive effect in this case if the ordinary elements of issue preclusion are met. The Court next evaluates whether the facts here support applying common law collateral estoppel.

### 4. Whether common law collateral estoppel applies to Grounds of Invalidity # 4, # 10, and # 14 under the relevant factors for issue preclusion

#### a. Applicable law

In a patent case, the law of the regional circuit determines "the general procedural question of whether issue preclusion applies," whereas Federal Circuit precedent governs "questions involving substantive issues of patent law." *Grecia v. Cullen/Frost Bankers, Inc*., Civil Action No. 6:21-CV-00016-ADA, 2021 WL 4340974, at *1 (W.D. Tex. Sept. 23, 2021) (quoting *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015)). In *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377 (Fed. Cir. 2013), the Federal Circuit instructed that because "the criteria of collateral estoppel are not unique to patent issues, on appellate review we are guided by the precedent of the regional circuit. . . . However, for any aspects that may have special or unique application to patent cases, Federal Circuit

precedent is applicable." *Id*. at 1380 (citing *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc*., 672 F.3d 1335, 1341 n. 1 (Fed.Cir.2012) ("Because the general principles of res judicata are not unique to patent law, we look to regional circuit law for guidance in applying those principles. . . . However, the question whether a particular claim in a patent case is the same as or separate from another claim has special application to patent cases, and we therefore apply our own law to that issue. . . .")).

Both SynQor and Vicor address the issue using Fifth Circuit law for guidance in applying issue preclusion. Dkt. No. 376 at 10-11; Dkt. No. 440 at 4. In this instance, the question is whether to give collateral estoppel effect to the decisions of the PTAB in inter partes reexamination proceedings. Circuit Judge Bryson recently noted that it is "therefore at least arguable that this is a case involving the application of collateral estoppel in the patent context, so that Federal Circuit law should apply." *IOENGINE, LLC v. PayPal Holdings, Inc*., Civil Action No. CV 18-452-WCB, 2022 WL 2800861, at *12 (D. Del. June 15, 2022). However, because Third Circuit and Federal Circuit law were the same with regard to the particular principles of collateral estoppel law that applied in that case, Judge Bryson noted the choice of law question did not matter to the disposition of the issue. *Id*. (citing both Third Circuit and Federal Circuit cases in support of the collateral estoppel factors). Similarly here, Federal Circuit law and Fifth Circuit law are the same with regard to the particular principles of issue preclusion that apply in this case; thus, the choice of law question does not matter to the disposition of this issue. *See id*.

"Issue preclusion or collateral estoppel prevents a party from litigating an issue it previously 'litigated and lost' in another action" and thus "'prevent[s] repetitious litigation of what is essentially the same dispute,'" in addition to "'conserving judicial resources, [] maintaining consistency, and [] avoiding oppression or harassment of the adverse party.'"

*Hacienda Records, L.P. v. Ramos*, 718 Fed. Appx. 223, 228 (5th Cir. 2018) (per curiam) (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmts. c, e. (1982))). Under Fifth Circuit law, collateral estoppel or issue preclusion requires that: (1) the issue in the current litigation is identical to the one in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the determination of the issue in the prior action was necessary to the judgment in that prior action and (4) there are no special circumstances that would render estoppel inappropriate or unfair.[7] *Papst Licensing GmbH & Co., KG v. Samsung Elecs. Co., Ltd*, 403 F. Supp. 3d 571, 601 (E.D. Tex. 2019) (citing *State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions*, 751 F.3d 684, 689 (5th Cir. 2014)). Courts do not consider special circumstances when "both parties were involved" in the prior suit.[8] *ETC Sunoco Holdings, L.L.C v. United States*, 36 F.4th 646, 649 (5th Cir. 2022) (citing *Bradberry v. Jefferson Cty*., 732 F.3d 540, 549 (5th Cir. 2013); also citing *Kariuki v. Tarango*, 709 F.3d 495, 506 (5th Cir. 2013)). Because SynQor and Vicor were both parties to the inter partes reexaminations, an inquiry into special circumstances is unnecessary.

---

[7] Federal Circuit law is similar. *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1315 (Fed. Cir. 2015) (citing *Jet, Inc. v. Sewage Aeration Sys*., 223 F.3d 1360, 1366 (Fed.Cir.2000). In *SynQor IV*, the Federal Circuit applied the criteria for issue preclusion set out in *In re Freeman*, 30 F.3d 1459 (Fed. Cir. 1994). According to the court, under Federal Circuit law, "[i]ssue preclusion is appropriate only if: (1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) plaintiff had a full and fair opportunity to litigate the issue in the first action." *SynQor, Inc v. Vicor Corp*., 988 F.3d 1341, 1353 (Fed. Cir. 2021) (quoting *In re Freeman*, 30 F.3d at 1465).

[8] The fourth factor, whether there are any special circumstances that make it unfair to apply the doctrine, considers equitable considerations that apply only to "offensive [non-mutual] collateral estoppel." *Bradberry v. Jefferson Cnty., Tex*., 732 F.3d 540, 548 (5th Cir. 2013) (citing *Swate v. Hartwell* (*In re Swate*), 99 F.3d 1282, 1290 (5th Cir.1996) (noting that some of our decisions improperly suggest the equitable factor applies to all collateral estoppel situations)); *see also Kariuki v. Tarango*, 709 F.3d 495, 506 (5th Cir. 2013)). The Fifth Circuit Court of Appeals has clarified the fairness requirement does not extend to instances of traditional or "mutual estoppel." *ETC Sunoco Holdings, L.L.C v. United States*, 36 F.4th 646, 649 (5th Cir. 2022) (citing *In re Swate*, 99 F.3d 1282, 1290 (5th Cir. 1996)).

Of the three relevant factors, two are disputed: (1) whether the issues are identical; and (2) whether the issues were fully litigated in the '702 and '290 reexaminations.

### b. Discussion

### 1. Whether the issues are identical

Applying Fifth Circuit law, SynQor asserts the Federal Circuit in *SynQor IV* has already held the second and third elements are met. Dkt. No. 376 at 11. Thus, according to SynQor, the only issue is whether this litigation presents the same issue. *Id*. SynQor asserts "it plainly does." *Id.* Specifically, SynQor asserts Vicor's Ground of Invalidity # 10 is based on the combination of Steigerwald '090 and Cobos, an issue already addressed by the Patent Office and affirmed by the Federal Circuit. *Id.* SynQor further asserts Vicor's Grounds of Invalidity # 4 and # 14, which rely on Cobos for the disclosure of a non-regulating isolation stage, is foreclosed by the Patent Office's determination, which was affirmed by the Federal Circuit on appeal, that Cobos does not disclose a non-regulating stage but rather a regulation stage. *Id.*

*Whether the issues are identical considering the "different combination of prior art"*

In response, Vicor first argues the issues are not identical because "collateral estoppel generally does not apply to a different combination of prior art than previously adjudicated":

> Grounds #4 and #14 raise new, previously undetermined factual questions. As to Grounds #10 and #14, they rely on additional references that were not part of the combinations in the past reexaminations and collateral estoppel generally does not apply to a different combination of prior art than previously adjudicated. *See e.g., Papst*, 403 F.Supp. 3d at 602. In *Pabst*, this court declined to apply collateral estoppel from findings regarding prior art in an IPR where there were different combinations of prior art as well as unadjudicated claims were at issue. *Id.* ("Considering the different … prior art combinations used, Samsung has not sufficiently established that the issues in this case were identical to and actually litigated in the IPRs"). SynQor provides no analysis of why a finding by the PTO regarding, for example, only Steigerwald '090 and Cobos applies to Ground #10 (Steigerwald '090, Steigerwald '539, Cobos, and Pressman).

Dkt. No. 440 at 4-5.

In *Papst*, the plaintiff filed suits against Samsung and others in 2015, alleging infringement of five patents, including the '449 patent. *Papst Licensing GmbH & Co., KG v. Samsung Elecs. Co., Ltd*, 403 F. Supp. 3d 571, 580 (E.D. Tex. 2019). In 2016 and 2017, a number of defendants filed a combined 37 petitions for inter partes review ("IPR"), including two IPR petitions against the '449 patent. *Id.* The PTAB issued Final Written Decisions ("FWD") cancelling all instituted claims, including all asserted claims of four of the patents-in-suit. *Id.* "Conversely, all IPRs against the '449 patent terminated without any of the claims being cancelled." *Id.* "Two IPRs were denied institution and the petitioners of the instituted IPRs settled the dispute without a FWD." *Id.* Because none of the IPRs concerning the '449 patent reached a FWD, there were no appeals pending on the asserted claims of the '449 patent. Accordingly, Papst agreed to stay the case pending appeals on the other four patents, but disputed a stay as to the '449 patent. *Id.*

In seeking to stay the case, Samsung argued the '449 patent substantially overlapped with claims found unpatentable by the PTAB and that many of the terms used in the '449 patent were identical to terms at issue in the pending IPR appeals. *Id.* (citation omitted). Case No. 6:15-cv-1095, Docket No. 718 at 4. Samsung also argued that the Federal Circuit's analysis of the scope and content of the identical prior art references would inform these proceedings. *Id.* The Court rejected Samsung's arguments, finding the terms Samsung specifically identified, "customary" and "communication," were either not addressed in the *Markman* briefing or not at issue in the IPR appeals. *Id.* (citation omitted). The Court also noted the specific prior art combination used by the PTAB, the "Kawaguchi/Schmidt combination" was not elected by Samsung and that a stay would therefore not simplify the issues, and the case proceeded to trial. *Id*. at 580-81.

28

In post-trial briefing, Samsung argued that collateral estoppel barred Papst's validity arguments such that judgment as a matter of law should be granted that the '449 patent is invalid because the PTAB's FWD concerning other patents (the appeals of which were dismissed) estops Papst from raising "any arguments it lost at the PTAB" at trial. *Id.* at 600-01.

The collateral estoppel analysis in *Pabst* does not support Vicor. There, the Court explicitly recognized that for collateral estoppel to apply, the asserted unadjudicated claims need not be completely identical to the adjudicated claims. *Id.* at 601 (explaining that "[c]omplete identity of claims is not required to satisfy the identity-of-issues requirement for claim preclusion" (quoting *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319 (Fed. Cir. 2015)). The Court further explained that "[i]f the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies." *Id.* (quoting *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013)). The Court accordingly took a detailed look at the invalidity issues raised in post-trial and determined they were "not identical and were not actually litigated" in the IPRs. *Id.* ("For example, Samsung relied on Murata for the emulated file system limitations at trial . . . , but Murata was not before of the IPRs" and "the portions of the IPRs Samsung references concern prior art other than Kawaguchi, thus cutting against Samsung's argument that the presence of Kawaguchi as a primary reference gives the IPRs [] preclusive effect.").

Here, SynQor explained why the issues are sufficiently identical for estoppel to apply, over Vicor's arguments to the contrary. Regarding Vicor's Ground # 10 (combination of Steigerwald '090 and Cobos with two other references), SynQor states the Patent Office made the factual determination twice that a skilled artisan would not combine Steigerwald '090 and Cobos due to their frequency incompatibilities. Dkt. No. 376 at 4, 9-10. Vicor does not dispute that but

claims Ground 10 is not identical to what was raised in the reexamination because it relies on additional references (Steigerwald '539 and Pressman) "that overcome the incompatibilities identified in the combination analyzed by the patent office." Dkt. No. 497 at 2. But Vicor never supports that statement; it only cites—without explanation—seven paragraphs from its expert report (which do not appear to address Vicor's assertion) and approximately 100 pages of claim charts for support. Dkt. No. 497 at 2. Vicor never made a legitimate attempt to explain how *adding* Steigerwald '539 and Pressman to the combination would allow one of ordinary skill to *combine* Steigerwald '090 and Cobos, which the Federal Circuit affirmed the PTAB's finding that they are incompatible. Vicor thus fails to show how these invalidity arguments are identical for estoppel purposes and the Court finds the additional references do not materially alter the analysis. *See Papst*, 403 F. Supp. 3d at 601 ("If the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies." (quoting *Ohio Willow Wood*, 735 F.3d at 1342)).

Regarding Grounds of Invalidity # 4 (Pressman and Cobos) and # 14 (Pressman, Cobos, Naverson, Niemala), SynQor asserts the Patent Office made the factual determination in its April 20, 2015 Decision in Vicor's reexamination of the '702 Patent that Cobos does not disclose a non-regulating stage but rather discloses a regulated isolation stage. *Id*. at 6 ("[I]n the reexamination of the '702 patent, Vicor asserted grounds of invalidity based on the combination of Pressman and Cobos [but the PTAB] concluded that Cobos instead discloses a regulated isolation stage."), *see also id*. at 11. Vicor asserts its combination here is different, because "Vicor relies on Pressman [not Cobos] to supply the non-regulating isolation stage." Dkt. No. 440 at 1. In reply, SynQor states that because Pressman's stage is "incomplete," Vicor's actual argument is "swapping out the Pressman stage and replacing it with the Cobos stage" and cites to a diagram

where Vicor's expert uses the "pre-regulator and isolation stage of Fig. 9 of Cobos" as the "pre-regulator and isolation stage in Fig. 3-4(B) of Pressman. Dkt. No. 376 at 4. Vicor appears to concede this nuance in its surreply. Dkt. No. 497 at 1 ("These Grounds rely on Cobos to provide the 'rectifiers … in synchronization limitation' of the [Pressman] stage").

The parties thus dispute what extent Grounds #4 and #14 rely on Cobos for a non-regulating stage, but there is no dispute that the Federal Circuit affirmed the PTAB's finding that Cobos does not disclose a regulated isolation stage and that the combination of Pressman and Cobos did not invalidate the '702 in the reexamination. More importantly, Vicor fails to explain why using only the rectifiers from Cobos isolation stage (presumably instead of other features/components) makes the combination so materially different so as to remove it from the realm of estoppel. The Court finds this nuance does not materially alter the analysis, given the similarities between what Vicor is advancing here and what it advanced in the reexamination. Vicor also never addresses the additional references in Ground #14, and therefore does not genuinely dispute that they do not materially alter the analysis.

### Whether the issues are identical concerning the "different legal standards"

Vicor next argues that the issues are not identical because inter partes reexaminations "have distinctly different standards. . . purposes, and outcomes compared to civil litigation," and courts have held that issues are not identical if the second action involves application of a different legal standard. Dkt. No. 440 at 5 (quoting *In re Swanson*, 540 F.3d 1368, 1377 (Fed. Cir. 2008)); *see also* Dkt. No. 497 at 2 (citing *SkyHawke Technologies, LLC v. Deca International Corp.*, 828 F.3d 1373 (Fed. Cir. 2016) for the proposition that different claim construction standards applied by the PTAB and federal courts prevent an expansion of collateral estoppel from an inter partes review). In *SkyHawke*, the Federal Circuit prevented a patent owner who prevailed in an inter

partes review from appealing the decision to the Federal Circuit simply to change the claim construction. *SkyHawke*, 828 F.3d at 1376-77. Those facts have no bearing here, especially given that Vicor's arguments do not rely on construing claims differently here than in the reexaminations. And the issue in *In re Swanson* was reversed. There, the Federal Circuit held that the PTO could consider the issue of validity despite a prior district court judgment finding the patent not invalid, in part, because of "the standard of proof—a preponderance of evidence—is substantially lower than in a civil case." *In re Swanson*, 540 F.3d at 1377-79. Whereas here, Vicor, after failing to show invalidity under the lower standard at the PTAB, presents no argument that the result would change because it now faces a *higher* standard in district court.

This Court's decision in *Papst* is instructive. The Court did not find collateral estoppel appropriate because the defendant was arguing a finding at a lower standard should be controlling even under a higher standard:

> The parties do not present, and the Court has not found, any binding precedent addressing whether a finding of invalidity under the preponderance of the evidence standard in an IPR collaterally estops invalidity arguments for separate, unadjudicated claims under the clear and convincing standard in a district court. The Supreme Court in *B&B Hardware* noted that the Restatement standards allow for some "well-known" exceptions to issue preclusion. *See* 135 S. Ct. at 1303, 1309–10. . . . One such exception is when the party seeking preclusion "has a significantly heavier burden than he had in the first action." Restatement (Second) of Judgments § 28(4) (1982); *see also* 18 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4422 (3d ed. 1998) ("[A] party who has carried the burden of establishing an issue by a preponderance of the evidence is not entitled to assert preclusion in a later action that requires proof of the same issue by a higher standard.").

*Papst*, 403 F.Supp.3d at 602; *see also IOENGINE, LLC v. PayPal Holdings, Inc*., Civil Action No. CV 18-452-WCB, 2022 WL 2800861, at *12-*13. (D. Del. June 15, 2022) (J. Bryson, sitting

by designation, holding that the lower validity standard at the PTAB "forecloses the court from applying collateral estoppel" in district court proceedings because of the higher validity standard). The situation here is reversed—SynQor argues that Vicor's inability to prove an invalidity argument under the lower preponderance of the evidence standard at the PTAB estops Vicor from raising the argument under the higher clear and convincing evidence standard in district court. Logic would suggest the differences in standards here supports the application of estoppel, i.e., if Vicor failed to meet the lower standard in reexamination, then it cannot meet the higher standard in litigation.

In sum, the Court finds the issues in the current litigation are identical to the ones in the prior inter partes reexaminations for purposes of collateral estoppel. The Court now considers whether the issues were fully and vigorously litigated in the prior reexaminations.

## 2. Whether the issues were "fully litigated" in the '702 and '290 reexaminations

Vicor also argues against collateral estoppel because the issues were not "fully litigated in the '702 and '290 reexaminations because, as the Supreme Court has explained, inter partes reexaminations are not adjudicatory." Dkt. No. 440 at 5-6. As part of its argument that inter partes reexaminations are examinational or inquisitorial rather than adjudicatory, Vicor first points out inter partes reexaminations lack depositions and cross-examination. *Id.* at 7.

As noted above, the Federal Circuit in *SynQor IV* addressed Vicor's arguments in detail, finding Vicor's view "too rigid" and without merit. *See, e.g. SynQor IV*, 988 F.3d at 1350-53 ("Vicor argues, however, that as part and parcel of inter partes reexaminations' 'inquisitorial' nature, parties do not have rights to discovery or subpoena power, depriving parties of the power to depose witnesses and foreclosing them from "submit[ting] transcribed testimony, taken under oath and subject to cross-examination."). The Federal Circuit concluded the "procedural

mechanisms used in inter partes reexamination are sufficient to apply collateral estoppel arising from a first reexamination to a second reexamination." *Id.* at 1351 (stating Vicor had the same opportunity to introduce its own evidence and contest SynQor's evidence in the '702 and '290 patent reexaminations as it did in the '190 patent reexamination and also had the opportunity to seek judicial review of the Board's unfavorable decision in the reexaminations).

Vicor's attempts to distinguish *SynQor IV's* reasoning are without merit. First, Vicor notes that *SynQor IV* involved applying factual findings across reexaminations, and then cites two cases for the apparent proposition that findings in reexaminations should not be applied to a district court proceeding. Dkt. No. 440 at 6-7. But neither case supports that proposition.[9] Vicor then claims *SynQor IV* is "at best, dicta" because the instant dispute concerns district court litigation governed by Fifth Circuit collateral estoppel principles. Dkt. No. 440 at 7.  But Vicor never shows why the reasoning it describes as dicta does not carry persuasive weight here.

Applying the Fifth Circuit factors governing issue preclusion, the Court finds *SynQor IV* instructive in considering whether the issues were fully and vigorously litigated in the previous '702 and '290 reexamination proceedings. The Federal Circuit has already considered Vicor's assertions regarding the lack of discovery and cross-examination. The Federal Circuit was unpersuaded that inter partes reexamination proceedings are so "fundamentally poor, cursory, or unfair," that the resolution of a factual dispute in a first inter partes reexamination should not collaterally estop the contrary resolution in a second reexamination. *SynQor IV*, 988 F.3d at 1353

---

[9] Vicor first cites *C-Cation* and argues that case "reject[ed] collateral estoppel because the Federal Circuit's review only considered whether substantial evidence supported the PTAB's decision." Dkt. No. 440 at 6-7. The holding of *C-Cation* was somewhat different: "Defendants' arguments regarding collateral estoppel have been effectively conceded, and are therefore accepted by the Court." *C-Cation Techs., LLC v. Time Warner Cable Inc.*, No. 2:14-CV-059-JRG-RSP, 2017 WL 6498072, at *2 (E.D. Tex. Dec. 19, 2017). Vicor's then cites *CRFD Research*, without any explanation (Dkt. No. 440 at 6-7), but that case does not deal with estoppel.

(quoting *B&B Hardware*, 575 U.S. at 158, 135 S.Ct. 1293). Considering the reasoning contained in *SynQor IV*, the Court is unpersuaded that Vicor did not have a full and fair opportunity to litigate the issues decided in the inter partes reexamination proceedings.

### 3. The Court's reliance on Vicor's Representations Regarding Estoppel

In addition to the above case law, the Court considers Vicor's earlier representations in prevailing to stay this case on the eve of trial in 2016 regarding the estoppel effect of the inter partes reexaminations. In its motion to stay, Vicor asserted "the preclusive effect of the *inter partes* reexaminations will ensure that the remaining issues are streamlined for trial." Dkt. No. 239 at 1; *see also id*. at 2 ("Vicor initiates the *inter partes* reexaminations in question and . . . will be estopped as a matter of law from asserting any invalidity defense that was, or could have been, brought in the pending reexaminations."); *see also id.* at 6 ("As the '190 patent is the parent to the other asserted patents, the Federal Circuit's findings are expected to be dispositive, or at least determinative, with respect to all of the asserted patents."); *see also id*. at 9 ("Further, because Vicor initiated the *inter partes* reexaminations in question, Vicor will be legally bound by the findings of the PTAB."). Although Vicor focused on statutory collateral estoppel rather than common law collateral estoppel, it was clear that Vicor anticipated estoppel restraints. *Id.* at 10-11 ("**Thus, regardless of the outcome of the Vicar-initiated *inter partes* reexaminations, the issues for trial will be narrowed.** As such, the reasons supporting a stay in this case are stronger than those in cases granting stays pending a non-preclusive, *ex parte* reexamination. *See, e.g., Datatreasury Corp.,* 490 F. Supp. 2d at 754 (granting stay pending *ex parte* reexamination because defendant agreed not to repeat arguments made during reexamination proceeding, as would be required by the *inter partes* estoppel provision).") (emphasis added).

In distinguishing the Court's decision from the Court's denial of Cisco's motion to stay in the '286 case, Judge Craven stated as follows:

> There are important differences between the related cases, two of which are discussed in consideration of this factor, which warrant a different result from that reached in the Cisco case: (1) all of the asserted patents are in *inter partes* reexaminations, as opposed to only some; and (2) the reexaminations at issue were initiated by Vicor in 2011-2012, carrying the force of estoppel in this case.

Dkt. No. 253 at 3. In considering the third factor of the stay analysis – and finding the stage of the litigation did not weigh against a stay – Judge Craven again referenced the estoppel effect. *Id*. at 8-9 ("As discussed earlier, the reexaminations will streamline the case for trial. For any remaining issues, the Court will have the benefit of the PTO's review; SynQor and Vicor will be entitled to pursue their claims and counterclaims; and Vicor will be bound by the outcome of the reexaminations."). The Court's prior reliance on Vicor's statements regarding estoppel to grant its request for a stay of the litigation confirm estoppel—if legally appropriate—should be applied here.

### Conclusion

Ultimately, issue preclusion is an "equitable doctrine" and the "discretion vested in trial courts to determine when it should be applied is broad." *Semcon IP Inc. v. Louis Vuitton N. Am., Inc*., Civil Action No. 2:18-CV-00194-JRG, 2020 WL 2544774, at *6 (E.D. Tex. May 19, 2020) (quoting *Nations v. Sun Oil Co*., 705 F.2d 742, 744 (5th Cir. 1983) (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979))). The purpose of collateral estoppel is "to protect litigants 'from the burden of relitigating an identical issue with the same party or his privy, and [to] promot[e] judicial economy by preventing needless litigation.'" *Schexnider v. LG Chem LTD of Korea*, Civil Action No. 6:21-CV-208-JDK, 2022 WL 2181056, at *3 (E.D. Tex. June 16, 2022) (quoting *Mozingo v. Correct Mfg. Corp*., 752 F.2d 168, 172 (5th

Cir. 1985) (citing *Parklane*, 439 U.S. at 326)). The doctrine thus "prevent[s] repetitious litigation of what is essentially the same dispute," "maintain[s] consistency," and "avoid[s] oppression or harassment of the adverse party." *Id.* (quoting *Hacienda*, 718 Fed. Appx. at 228). These principles apply here with full force, given the near identical nature of the validity issues and the guidance from the Federal Circuit. *Id.*

The undersigned recommends the Court enter summary judgment that Vicor is estopped from contending that claim 2 of the '190 patent is invalid as obvious on Vicor's disclosed Grounds of Invalidity # 4, # 10, and # 14.

## V.    RECOMMENDATION

Based on the foregoing, it is

**RECOMMENDED** that SynQor's Motion for Summary Judgment on Vicor's Invalidity Defenses Due to Estoppel (Dkt. No. 376) be **GRANTED.**

<u>Objections</u>

Ordinarily, within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. 636(b)(1)(C). However, considering the fast-approaching trial, any objections must be filed on or before **October 3, 2022**.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from de novo review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*., 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

SIGNED this the 26th day of September, 2022.

J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE