UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SYNQOR, INC. | § | |
| **Plaintiff** | § | |
| | § | |
| VS. | § | **Case No. 2:14-CV-287-RWS-JBB** |
| | § | |
| VICOR CORPORATION | § | |
| **Defendant** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. § 636. The following motion is pending before the Court:

**SynQor's Renewed Motion for Summary Judgment on Vicor's §112 Affirmative Defenses and Counterclaims (Dkt. No. 379).**

The Court, having carefully reviewed the relevant briefing, recommends SynQor's motion for summary judgment be **GRANTED**.

## I.    BACKGROUND

**A.    Original '54 case**

This litigation began with a complaint filed by SynQor, Inc. ("SynQor") in January of 2011, asserting claims of patent infringement against three defendants—Vicor Corp. ("Vicor"), Ericsson, Inc. ("Ericsson"), and Cisco Systems, Inc. ("Cisco"). Cause No. 2:11-cv-54 ("'54 case"). SynQor and Ericsson quickly settled, and SynQor filed an amended complaint shortly thereafter. In the '54 case, SynQor alleged, among other things, Vicor infringes the patents at issue when it makes, imports, uses, promotes, offers to sell, and/or sells unregulated and/or semi-

regulated bus converters used in intermediate bus architecture power supply systems. According to SynQor, Vicor targets products to customers, such as computer and telecommunications equipment manufacturers, including Cisco, that sell and ship products all over the world.

**B.      Severance into '286 and '287 cases**

In early 2014, SynQor's claims against Vicor and Cisco were severed into two newly-created cases—Cause No. 2:14-cv-286 (against Cisco) and Cause No. 2:14-cv-287 (against Vicor) ("'287 case" or "current case"). In the current '287 case against Vicor, SynQor originally alleged Vicor indirectly infringes four patents relating to unregulated bus converter technology—United States Patent Nos. 7,072,190 (the '190 patent), 7,564,702 (the '702 patent), 8,023,290 (the '290 patent) and 7,272,021 (the '021 patent). Dkt. No. 2, ¶¶ 35-58.

**C.      Current '287 case**

In 2016, shortly before trial in the current case, Vicor sought and obtained a stay of SynQor's claims pending the final resolution of inter partes reexaminations Vicor had filed in 2011 and 2012 with the Patent Office. Well over five years later, the Court lifted the stay. Dkt. No. 311. Post-reexamination, the asserted claims are claim 2 of the '190 patent and claims 55 and 67 of the '702 patent.[1] *See* Dkt. No. 548 (Joint final Pre-Trial Order) at 1. SynQor claims Vicor's customers indirectly infringe SynQor's patents when customers purchase Vicor bus converters and combine them with additional circuitry that SynQor asserts meets the claim limitations.

---

[1] The asserted claims of the '190 and '702 patents are directed to power converter systems incorporating an isolated stage/converter with particular characteristics that is used to power two or more non-isolated, regulated stages/converters in what is now known as an intermediate bus architecture ("IBA"). *See, e.g.*, '190 patent, claim 2; '702 patent, claim 55; April 11, 2014, Infringement Expert Report of Steven B. Leeb, Ph.D. ("Leeb Rep."),  ¶¶ 51, 53; May 2, 2014, First Suppl. Infringement Expert Report of Steven B. Leeb, Ph.D. ("Suppl. Leeb Rep."), ¶¶ 51, 53. According to SynQor, the isolated converters used in the claimed IBA systems are known today as bus converters, and the two or more non-isolated, regulated converters are now commonly known as point-of-load converters.

The pretrial conference is set before the undersigned October 6, 2022, with jury selection and trial scheduled October 17, 2022 before District Judge Schroeder.

## D.    SynQor's motion for summary judgment

In its motion, SynQor moves for summary judgment on Vicor's affirmative defenses and counterclaims based on 35 U.S.C. § 112. According to SynQor, these affirmative defenses and counterclaims arise from SynQor's previous assertion of claims of infringement of the '190 and '702 patents that SynQor is no longer making. SynQor explains as follows:

> Earlier in this case, SynQor was alleging infringement by Cisco products incorporating certain bus converters from its suppliers other than Vicor (the "dual-mode converters"), which, over a portion of their normal operating range, operated in an unregulated manner because they did not control their output towards a predefined value. Together, Cisco and Vicor (the Defendants at the time—Cisco has since settled) argued that if the claims of the patents-at-issue were read to cover the dual-mode converters, then the claims would violate the written description and enablement requirements of 35 U.S.C. § 112. Similarly, with respect to the definiteness requirement of § 112, Cisco and Vicor argued that the claims are indefinite because—if they cover dual-mode converters—they are an allegedly improper mix of apparatus and method claims, and are thus invalid under the Federal Circuit's holding in *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005). These are Vicor's only § 112 defenses in this case—and each has been presented as contingent on whether the dual-mode converters were found to infringe.
>
> Prior to the stay of this case, the Magistrate Judge issued a Report finding that the dual-mode converters do not infringe and Cisco subsequently settled with SynQor. Ex. 1, '286 Dkt. 208, 11/21/14 Sealed R&R (the "non-infringement R&R"). Thus, post-stay, SynQor no longer asserts this claim scope or that the dual-mode converters infringe. Accordingly, the sole basis for Vicor's § 112 defenses and counterclaims has been nullified, making summary judgment appropriate.

Dkt. No. 379 at 1-2.

In its response, Vicor asserts SynQor is not entitled to summary judgment on Vicor's affirmative defenses and counterclaims for lack of written description, enablement, or indefiniteness under § 112. Specifically, Vicor contends as follows:

SynQor's Motion (Dkt. 379) is based on its withdrawal of infringement allegations against "dual mode" converters. But validity does not depend on the particular infringement position taken by the patentee—withdrawing a claim of infringement cannot make an invalid claim valid. Also, contrary to SynQor's contention, the Magistrate Judge's Report and Recommendation on Non-Infringement ("Non-Infringement R&R"), rendered in SynQor's now-dismissed parallel action against Cisco, only strengthens Vicor's position that the asserted claims are invalid under § 112. Judge Craven did not, as SynQor suggests, determine that "dual-mode converters do not infringe" in all circumstances. Rather, based on arguments made by SynQor in the Cisco case, see Ex. 1 ('286 Dkt. 104, SynQor MSJ § 112) at 4-5, Judge Craven found that the asserted claims may encompass "dual mode" converters, and that such "dual mode" converters would infringe if they operated in the non-regulating mode. Ex. 2 ('286 Dkt. 208, Non-Infringement R&R) at 19, 21 n.5.

The fact that SynQor has now settled with Cisco, and "is no longer urging this claim scope," Dkt. 379 at 4-5, is irrelevant. Having successfully asserted that the very patent claims at issue here were broad enough to cover "dual mode" converters, SynQor cannot now take a conflicting position. Notably, SynQor makes no effort to demonstrate an absence of disputed fact as to whether the specification actually discloses or enables such "dual mode" converters. SynQor is therefore not entitled to summary judgment on Vicor's written-description and enablement defenses.

Moreover, the Magistrate Judge's reasoning bolsters Vicor's position that the asserted claims are a mix of apparatus and method of use claims that should be held indefinite under *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005). Under the rationale of Judge Craven's Non-Infringement R&R, the question of whether a dual-mode converter meets the limitations of SynQor's patent claims turns on the manner in which the converter is put to use.

Dkt. No. 434 at 1-2.

## II.  LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News*, *Inc*., 209 F.3d 419, 424 (5th Cir. 2000).

### III. MATERIAL FACTS

#### A.    Parties' evidence

SynQor attached the following to the Declaration of Paul Rogerson in Support of SynQor's Renewed Motion for Summary Judgment on Vicor's § 112 Affirmative Defenses and Counterclaims: (1) copy of the Report and Recommendation of the United States Magistrate Judge Regarding Motion for Partial Summary Judgment No. 1 (Dkt. No. 208), dated November 21, 2014 in the '286 case; (2) copy of excerpts from the Expert Report of Michael G. Giesselmann, Ph.D. Regarding Invalidity of the Asserted Claims, served April 11, 2014; (3) copy of the Report and Recommendation of the United States Magistrate Judge (Dkt. No. 210), dated November 21, 2014 in the '286 case; and (4) copy of an Order Granting Unopposed Motion to Vacate Report

and Recommendations of the United States Magistrate Judge Regarding Motion for Partial Summary Judgment No. 1 (Dkt. No. 368), dated November 24, 2015 in the '286 case.

Vicor attached the following to the Declaration of Patrick Schmidt in Support of Vicor' Opposition to SynQor's Motion for Summary Judgment on Vicor's § 112 Affirmative Defenses and Counterclaims: (1) copy of an excerpt of SynQor's Motion For Summary Judgment On Defendants' § 112 Affirmative Defenses and Counterclaims (Dkt. No. 104) in the '286 case; (2) copy of the Report and Recommendation of the United States Magistrate Judge Regarding Motion for Partial Summary Judgment No. 1 (Dkt. No. 208), dated November 21, 2014 in the '286 case; (3) copy of excerpts of the Report and Recommendation regarding Defendants' § 112 Affirmative Defenses and Counterclaims (Dkt. No. 197), dated November 21, 2014 in the '287 case; (4) copy of excerpts of the transcript of the deposition of Martin F. Schlecht, dated December 13, 2013 ("Schlecht 12/13/13 Dep."); (5)  copy of excerpts of Amendment and Applicant Remarks in Patent Application No. 11/982,327, dated May 11, 2010; (6) copy of excerpts of the transcript of the deposition of Steven B. Leeb, dated May 28, 2014 ("Leeb 5/28/14 Dep."); (7) copy of an excerpt of the Rebuttal Expert Report of Steven B. Leeb, dated May 19, 2014 ("Leeb Rebuttal Report"); (8) copy of excerpts of the transcript of the deposition of Martin F. Schlecht, dated December 12, 2013 ("Schlecht 12/12/13 Dep."); (9) copy of excerpts of the transcript of the deposition of Steven B. Leeb, dated October 11, 2013 ("Leeb 10/11/13 Dep."); and (10) copy of excerpts of the transcript of the deposition of Steven B. Leeb, dated May 30, 2014 ("Leeb 5/30/14 Dep.").

**B.    SynQor's pre-stay "dual mode" theory of infringement**

Earlier in this case, SynQor was alleging infringement by Cisco products incorporating certain bus converters from its suppliers other than Vicor ("dual mode converters"), which over

a portion of their normal operating range, operated in an unregulated manner because they did not control their output in a predefined value. Specifically, in the '286 case against Cisco, there were two categories of accused Cisco products: products incorporating old CPNs and products incorporating new CPNs. The old CPNs are the unregulated converters found to infringe in the prior litigation by SynQor against Cisco's suppliers, *SynQor, Inc. v. Artesyn Technologies, Inc., et al.*, Case No. 2:07-cv-497 (the "'497 case"). After the verdict in the '497 case, Cisco replaced all of the old CPNs in its products. Pre-stay, SynQor accused some of the replacement parts (the "New CPNs") of infringement. The New CPNs fell into two sub-categories: (1) regulated converters (the "regulated CPNs"); or (2) unregulated converters made by Vicor, the defendant in the current case (the "Vicor CPNs").

Together, Cisco and Vicor argued (pre-stay) that if the claims were read to cover dual mode converters, then the claims would violate the written description and enablement requirements of §112. They also argued the claims – if they cover dual mode converters – are indefinite because they are an allegedly improper mix of apparatus and method claims. Post-stay, SynQor is no longer asserting that dual mode converters infringe.

## C.    Vicor's § 112 challenges

In the pre-stay April 11, 2014 Expert Report of Michael G. Giesselmann, Ph.D. Regarding Invalidity of the Asserted Claims ("Giesselmann Report"), Dr. Giesselmann opines the asserted non-regulating patent claims of the '190 and '702 patents lack written description support (Giesselmann Report (Dkt. No. 96-7), ¶¶ 890-934); are not enabled (¶¶ 935-951); and are indefinite (¶¶ 952-969).[2] Specifically, Dr. Giesselmann opines as follows.

---

[2] The excerpt of Dr. Giesselmann's report attached to SynQor's renewed motion does not contain all of the relevant paragraphs; thus, the Court cites herein the excerpt of Dr. Giesselmann's report which was attached as Exhibit 6 to SynQor's pre-stay motion for summary judgment on Vicor's § 112 affirmative defenses and counterclaims.

1.    **Dr. Giesselmann's lack of written description opinions and evidence in support**

Pre-stay, it was Dr. Giesselmann's understanding that SynQor contended the asserted "non-regulating" claims of the '190 and '702 patent ("the unregulated patents") allegedly cover a converter or a stage with both a "regulated mode" and an "non-regulated mode" of operation. Giesselmann Report (Dkt. No. 96-7), ¶ 890. In other words, SynQor alleged the unregulated patents encompass a converter or stage that causes two "modes" of operation, specifically an "non-regulated mode" of operation over a portion of the operating range of a source voltage and a "regulated mode" of operation over another portion of the operating range of the source voltage. *Id.* Dr. Giesselmann opined a person of ordinary skill in the art, "reading the asserted 'non-regulating' claims of the unregulated patents and their specifications would recognize that these patents do not cover a converter or stage that includes the two 'modes' of operation (or 'a stage or converter that is non-regulating at least some of the time')." *Id.*, ¶ 891.

"However, to the extent that the claims could be interpreted (as SynQor interprets them) to encompass a 'dual mode' converter (or 'a stage or converter that is non-regulating at least some of the time'), each of these asserted claims is invalid for lack of written description, because the patent specifications do not disclose a non-regulating converter that sometimes regulates." *Id.*, ¶ 892. Dr. Giesselmann further stated that "[t]o the extent that SynQor and Dr. Schlecht are correct that the asserted nonregulating claims, and in particular, the non-regulating limitations, encompass converters with two 'modes' of operation, a converter that regulates for at least some portion of its operating range, or 'a stage or converter that is non-regulating at least some of the time', they are invalid for lack of written description under Section 112, paragraph 1." *Id.*, ¶ 922.

According to Dr. Giesselmann, the asserted unregulated patents do not describe a converter with an unregulated and regulated "mode" (or an unregulated "mode" and a semi-

regulated "mode"). *Id.*, ¶ 923. Citing Dr. Schlecht's December 13, 2013 deposition testimony, Dr. Giesselmann stated Dr. Schlecht himself admitted the '190 patent specification does not describe converters with two "modes" of operation; he testified only that the '190 patent does not "preclude" or "forbid" two "modes" of operation. *Id.* (citations omitted).

Vicor attached to its response excerpts from that part of Dr. Schlecht's December 13, 2013 deposition. When asked at his deposition whether the '190 specification teaches or describes a dual mode converter, Dr. Schlecht testified that "it does not preclude it" and "there is nothing in there that says it is not allowed." Schlecht 12/13/13 Dep. (Dkt. No. 434-6) at 192:18-23. Specifically, Dr. Schlecht testified that because the '190 specification "doesn't preclude it," then "I think you might say it describes it." *Id.* at 193:23-194:6. He went on to explain that "[t]he fact that [the specification] doesn't preclude [a dual-mode converter] seems to me would cause the person of ordinary skill in the art reading to. . . understand that it was possible." *Id.* at 195:16-23; *see also id.* at 193:1-7 (testifying that since, in his opinion, "a person of ordinary skill reading the [specification] would not be driven to think it was not allowed . . . by definition, I think one -- a person of ordinary skill in the art might consider it as a possibility" ).

Vicor also attached evidence to its response regarding SynQor's lack of awareness of a dual mode converter at the time that Dr. Schlecht purportedly made the invention of the asserted patents; thus, according to Vicor, Dr. Schlecht could not have had possession of the claimed subject matter as of the filing date. In his May 28, 2014 deposition, Dr. Leeb testified as follows:

> Q. So there were no converters known to SynQor that were -- as used in a PCA that were regulated over part of their input voltage range and unregulated over part of their input voltage range, true?
>
> A. If there were, SynQor didn't know that, and I didn't, either.

Leeb 5/28/14 Dep. at 127:16-22; *see also* Leeb Rebuttal Report (Dkt. No. 434-9), ¶ 108 (asserting that SynQor's statements to the Patent Office (which include statements up to 2013) "were made at times when all the bus converters known to SynQor and the relevant witnesses were either unregulated over their entire specified input voltage range, semi-regulated over their entire specified input voltage range, or regulated over their entire specified input voltage range"). According to Dr. Leeb, Cisco and its suppliers, in an effort to circumvent SynQor's patents, first created – in the development of the replacement and vertical mount bus converters (New CPNs) – bus converters for Cisco's use that are regulated over part of their input voltage range and unregulated over part of their input voltage range. Leeb Rebuttal Report (Dkt. No. 434-9), ¶ 108.

**2.      Dr. Giesselmann's lack of enablement opinions**

In this section of his pre-stay report, Dr. Giesselmann again opined that the '190 and '702 patents "do not disclose—much less describe—a converter with an unregulated and regulated "mode" (or an "nonregulated mode" and a "semi-regulated mode"). Giesselmann Report (Dkt. No. 96-7), ¶ 936. According to Dr. Giesselmann, without any such disclosure, the asserted unregulated patents do not teach a person of ordinary skill reading the asserted patent specifications how to make and use a converter, system with a converter, and/or a method of providing DC output from a DC power source with two "modes" of operation (or a stage or converter that is non-regulating at least some of the time). *Id.* Dr. Giesselmann further opined as follows:

> [] **To the extent that the claims could be interpreted (as SynQor contends) to encompass a "dual mode" converter (or the non-regulating limitation can encompass "a stage or converter that is non-regulating at least some of the time"), each of the non-regulating asserted claims is invalid for lack of enablement under Section 112, paragraph 1**, because the specification does not disclose or describe to, much less enable, a person skilled in the art how to make and use, a non-regulating converter or stage that sometimes regulates.

10

> [] Without any such disclosure, the asserted unregulated patents do not teach a person of ordinary skill reading the asserted unregulated patent specifications how to make and use a stage or converter with two "modes" of operation that regulates in at least a portion of its normal operating range (or a stage or converter that is non-regulating at least some of the time).

*Id.*, ¶¶ 938-39 (emphasis added). According to Dr. Giesselmann, without any disclosure of the "purported claimed invention (according to SynQor) in the unregulated asserted patents of a converter that is both regulating and non-regulating in the non-regulating isolating stage, a skilled artisan reading the asserted unregulated patents would conclude that the inventor(s) had not adequately enabled the full scope of the purported invention." *Id.*, ¶ 941. Later in the same section, Dr. Giesselmann asserts:

> [946] Because the asserted unregulated patents do not teach a person how to make a converter or system with a converter that regulates during the claimed unregulated stage, the specifications do not enable one of ordinary skill in the art to practice "the full scope of the claimed invention."

> [947] In my opinion, if SynQor and Dr. Schlecht are correct that the asserted [n]on-regulating claims of the '190, '021, '702 and '290 patents are broad enough to cover a converter, system with a converter, and/or a method of providing DC output from a DC power source that is both regulating and non-regulating in the non-regulating stage, a skilled artisan reading the asserted unregulated patents would conclude that the inventor(s) had not adequately enabled the claimed invention.

*Id.*, ¶¶ 946-47.

### 3.    Dr. Giesselmann's indefiniteness opinions and evidence in support

Dr. Giesselmann also opined in his pre-stay report that the non-regulating patent claims of the '190 and '702 patents are indefinite under section 112, paragraph 2, for the following three reasons:

> [955] First, the asserted non-regulating patent claims are indefinite because, according
> to Dr. Schlecht and Dr. Leeb, a person skilled in the art cannot tell from the structure of the accused apparatus (the converter or stage of the accused system) whether the converter or stage is regulated or non-regulated such that it satisfies

the "non-regulating" claim limitation. **If this is true**, these asserted non-regulating patent claims fail to sufficiently disclose the metes and bounds of the claimed invention(s) to a person skilled in the art and thus are indefinite.

[956] Second, according to Dr. Schlecht and Dr. Leeb, to determine whether an intermediate bus converter (or a system containing the same) satisfies the "non-regulating" or "unregulated" claim limitation of the asserted non-regulating patent claims, they would, among other things, need to look at the customer's intended method of use, or how the customer uses the apparatus over the intended range of the input voltage. **If this is true**, the asserted nonregulating claims improperly require mixed statutory classes by simultaneously claiming an apparatus and a method of using that apparatus.

[957] Finally, according to SynQor, a person of skill in the art must assess at the products as a whole to determine infringement. SynQor contends that the unregulated bus converter or stage is not the accused product, but rather "[t]he end product (containing the whole power architecture, including converters) is the accused product." Dkt. No. 330, SynQor, Inc.'s Sur-Reply to Defendant Cisco Systems, Inc.'s Motion for Leave to Amend Supplemental Invalidity Contentions, dated Jan. 31, 2014, at p. 4. **If this is true**, the asserted non-regulating claims are indefinite because an infringement determination would (1) require an analysis of technical specifications separate from the accused structure and are outside of the claimed power architecture, and thus fail to sufficiently disclose the metes and bounds of the claimed inventions to a person skilled in the art; and (2) improperly require mixed statutory classes by simultaneously claiming an apparatus and a method of using that apparatus.

Giesselmann Report (Dkt. No. 96-7), ¶¶ 955-57 (internal footnote omitted) (emphasis added).

Citing to Dr. Schlecht's December 13, 2013 deposition testimony, Dr. Giesselmann stated Dr. Schlecht testified that to determine whether an intermediate bus converter is "unregulated" and thus infringes SynQor's asserted apparatus claims, he would need to look at the customer's method of use, or "intended range of the input voltage." *Id.*, ¶ 958 (citing Schlecht 12/13/13 Dep. at 179:13-181:24).

Vicor attached to its response excerpts from Dr. Schlecht's December 12, 2013 deposition and Dr. Leeb's October 11, 2013 deposition. Dr. Schlect testified, in relation to fully regulated converters and the intended range of operation for a converter (which is defined by its datasheet), that he would need to examine the customer's intended use over the "intended

operating range." Schlecht 12/12/13 Dep. (Dkt. No. 434-10) at 68:20-24, 137:8-15. SynQor's technical expert, Dr. Leeb, has similarly testified that, in order to assess whether a converter is regulated or unregulated, and thus whether it falls within the purported scope of the claims, he "might also want to know what [a converter's] intended use was, of course," in addition to conducting testing and reviewing schematics, datasheets, and "deposition testimony." Leeb 10/11/13 Dep. (Dkt. No. 434-11) at 234:15-235:19; 242:7-243:5.

Dr. Leeb also testified as follows: "[I]f I'm looking at the apparatus for the non-regulating isolation stage, I need to know how the board is designed and configured for the apparatus of the non-regulating isolation stage. . . . [i]t doesn't matter whether it ever gets used. The question is, is it in the design intent a non-regulating isolation stage." Leeb 5/30/14 Dep. (Dkt. No. 434-12) at 582:4-15; *see also, e.g., id.* at 581:6-11, 583:3-9, 585:4-588:23, 589:18-591:3, 591:21-593:11 (explaining that it would be impossible to assess infringement of a product without understanding how it "has been designed and configured"). Dr. Leeb explained that he "ha[d] to understand that apparatus somehow," because "the physical structure of the apparatus has been . . . designed and configured with the -- with the assumption . . . for where it will be going in the hypothetical method using it." *Id.* at 591:2-592:8. Dr. Leeb also testified that the non-Vicor New CPNs both controlled their output toward a predefined operating point and do not control their output towards a predefined operating point. Leeb 5/28/14 Dep. (Dkt. No. 434-8) at 218:14-21; *see also id.* at 219:22-20:2 ("Q: The new CPNs are always non-regulating isolation stages and they are always regulating isolation [stages]? A: I think I'd be comfortable saying that, yes, sir.").

Later in Dr. Giesselmann's pre-stay report, Dr. Giesselmann further opines as follows:

[963] **If SynQor is correct** that an infringement analysis of the asserted claims requires more from a person skilled in the art than comparing the characteristics

13

of an accused product against the asserted claims, **then** these asserted non-regulating patent claims are indefinite under Section 112, paragraph 2. In my opinion, the patents' claim to a non-regulating isolation stage is not sufficiently precise to provide competitors with an accurate determination of the metes and bounds of the protection involved, and is, for that reason, too ambiguous to meet the definiteness requirement of Section 112, paragraph 2.

[964] Moreover, **if SynQor is correct** that an infringement determination requires an assessment of, among other things, the customers' intended use of the allegedly infringing apparatus, i**n my opinion, these asserted non-regulating patent claims are similarly indefinite under Section 112, paragraph 2**. Not only is the non-regulating isolation stage not sufficiently precise to provide competitors with an accurate determination of the metes and bounds of the protection involved, but these claims improperly mix statutory classes by simultaneously claiming an apparatus and a method of using that apparatus.

[968] In my opinion, if Dr. Schlecht and Dr. Leeb are correct that a person of ordinary skill in the art cannot assess infringement, or know the metes and bounds of the asserted claims by comparing the accused product to the claims (in view of the specification), the claims are indefinite under Section 112, paragraph 2.

Giesselmann Report (Dkt. No. 96-7), ¶¶ 963-64, 968 (emphasis added).

## D.    Pre-stay Report and Recommendations

On November 21, 2014, prior to the stay, Judge Craven entered two R&Rs, both of which were attached to and referenced in the parties' summary judgment briefing.

## 1.    Non-Infringement R&R in the '286 case

In the '286 case, now-retired Magistrate Judge Craven entered a Report and Recommendation of the United States Magistrate Judge Regarding Motion for Partial Summary Judgment No. 1 ("Non-Infringement R&R"), recommending Cisco's motion for partial SJ regarding non-infringement by products incorporating new CPNs be granted, "except to the extent SynQor is able to prove certain systems incorporating new CPNs do not have input voltages which produce regulated outputs." '286 case, Dkt. No. 208.

In the Non-Infringement R&R, Judge Craven addressed, among other things, the "non-regulating" and "without regulation" limitations, specifically discussing SynQor's "dual mode"

14

theory. *Id.* at 12-19. With regard to power converters with 50V chassis, Judge Craven held Cisco established there was no genuine issue of material fact; however, as to power converter systems in which the identified DC power source was one that results in the system operating in the "non-regulating mode," Judge Craven held a factual dispute may exist. *Id.* at 18 ("The record is not complete as to whether such a power source would also result in operation within only the non-regulating portion of the graph. Thus, in the relevant voltage ranges for the 42V chassis it may be that there are not in fact two separate modes of operation but rather an isolation stage that operates in just one mode, swinging back and forth between regulating and non-regulating operation.").

Judge Craven also addressed the "fixed duty cycle" limitations, making a similar recommendation. *Id.* at 19-20. In a footnote, Judge Craven stated the record appeared incomplete with regard to duty cycles as to whether or not there are systems that have a DC power source that results in only one mode of operation, having both varying and non-varying cycles. *Id.* at 20, n. 4; *see also* 21, n. 5 (noting the record was not complete as to whether or not the 42 volt system operated only in a non-regulating manner or whether such systems operated in a manner that regulates at time and does not regulate at times).

The Non-Infringement R&R was never adopted. At the request of the parties in the '286 case after SynQor and Cisco successfully mediated the case, Judge Craven vacated the Non-Infringement R&R on November 24, 2015.[3] '286 case, Dkt. No. 368.

**2.      § 112 R&R in '286 and '287 cases**

On the same day she entered the Non-Infringement R&R in the '286 case, Judge Craven entered – in both the '286 and '287 cases – a Report and Recommendation of the United States Magistrate Judge ("§ 112 R&R"), addressing cross motions on the defendants' written

---

[3] On the same date, Judge Craven entered an order in the '286 case, granting Vicor's motion to stay the '286 case pending completion of inter partes reexaminations. '286 case, Dkt. No. 253.

description, enablement, and indefiniteness challenges. '286 case, Dkt. No. 210; '287 case, Dkt. No. 197. Judge Craven recommended SynQor's motion for summary judgment on the defendants' § 112 affirmative defenses and counterclaims, and Cisco's motion for partial summary judgment of invalidity pursuant to § 112, be denied. '287 case, Dkt. No. 197. The § 112 R&R again addressed SynQor's dual mode theory of infringement, noting the "fundamental disagreement between the parties as to whether the specification discloses a dual mode converter with both regulated and unregulated modes of normal operation." *Id.* at 14.

On December 15, 2014, in the '287 case, Judge Craven granted SynQor's unopposed motion to clarify the § 112 R&R, recommending that SynQor's Motion for Summary Judgment on Defendants' § 112 Affirmative Defenses and Counterclaims be granted with respect to Vicor's non-"substantially uninterrupted" indefiniteness defenses to the extent the district court adopts the Non-Infringement R&R on Cisco's Motion No. 1 in the '286 case in its entirety. '287 case, Dkt. No. 205. The non-Infringement R&R was never adopted because the '286 settled.

## IV. DISCUSSION

### A.    35 U.S.C. § 112

Every patent is presumed valid. *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195 (Fed. Cir. 1999) (citing 35 U.S.C. § 282 (1994)). The presumption of validity includes a presumption that the patent complies with § 112. *Id.* (citing *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 941, 15 USPQ2d 1321, 1329 (Fed.Cir.1990)).

Section 112 states the required content of the patent document. *Nature Simulation Sys. Inc. v. Autodesk, Inc.*, 23 F.4th 1334, 1339 (Fed. Cir. 2022). Section 112(a) provides that the specification must describe the invention in full, clear, concise, and exact terms, as to enable its

practice by any person skilled in the field of the invention, and must include the best mode known to the inventor:

> § 112. Specification
>
> (a) In General.-- The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

*Id.* The claims define the patent right, and perform the "notice" function of legal documents; thus precision and clarity are necessary. *Id.* (citing *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010)).

To satisfy the written description requirement, a patent's specification must "reasonably convey[ ] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1016 (Fed. Cir. 2022) (quoting *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)). Such possession must be "shown in the disclosure." *Id.* It is not enough that a claimed invention is "an obvious variant of that which is disclosed in the specification." *Id.* (quoting *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)). Disclosure is essential; it is "the *quid pro quo* of the right to exclude." *Id.* (quoting *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 484, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974); also citing *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 970 (Fed. Cir. 2002) ("[D]escription is the *quid pro quo* of the patent system.")). Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed.

Cir. 2008) (citing *Invitrogen Corp. v. Clontech Labs., Inc*., 429 F.3d 1052, 1072–73 (Fed.Cir. 2005)).

The requirement of enablement, stated in 35 U.S.C. § 112, enforces the essential "quid pro quo of the patent bargain" by requiring a patentee to teach the public how "to practice the full scope of the claimed invention." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091, 1099–1100 (Fed. Cir. 2020) (quoting *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1244 (Fed. Cir. 2003)). Although a patent's specification need not "describe how to make and use every possible variant of the claimed invention," "when a range is claimed, there must be reasonable enablement of the scope of the range." *Id.* at 1100 (quoting *AK Steel*, 344 F.3d at 1244). To qualify as "reasonable," "the specification. . . must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *Id.* (quoting *ALZA Corp. v. Andrx Pharm., LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010) (citing *Genentech Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997))). This statutory requirement is limited to what is claimed. *Id.* Enablement is a question of law based on underlying factual inquiries. *Taylor v. Iancu*, 809 Fed. Appx. 811, 814 (Fed. Cir. 2020) (citing *ALZA*, 603 F.3d 935, 940 (Fed. Cir. 2010) (citing *Enzo Biochem, Inc. v. Calgene, Inc*., 188 F.3d 1362, 1369 (Fed. Cir. 1999))).

The Supreme Court of the United States has "read [35 U.S.C.] § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *WAPP Tech Ltd. P'ship v. Bank of Am., N.A.*, Civil Action No. 4:21-CV-670, 2022 WL 2463569, at *3 (E.D. Tex. July 6, 2022) (quoting *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014)). "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Id.* (quoting *Datamize, LLC v. Plumtree*

*Software, Inc*., 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citations and internal quotation marks omitted in *WAPP*), *abrogated on other grounds by Nautilus*, 134 S. Ct. 2120). "Indefiniteness must be proven by clear and convincing evidence." *Id*. (quoting *Sonix Tech. Co. v. Publ'ns Int'l, Ltd*., 844 F.3d 1370, 1377 (Fed. Cir. 2017)).

## B.    Analysis

SynQor asserts it is appropriate to grant summary judgment on Vicor's § 112 affirmative defenses and counterclaims based on SynQor's withdrawal of its "dual mode" theory of infringement. Vicor asserts its § 112 validity positions "are contingent on whether the scope of the asserted claims are broad enough to encompass dual-mode converters" and are "not contingent on the whims of SynQor's infringement contentions." Dkt. No. 434 at 2. According to Vicor, now that the dual-regulating converters are no longer at issue, "SynQor attempts to back-pedal from its insistence that the claims cover this scope under certain circumstances." *Id.* Vicor contends SynQor may not "unilaterally change the meaning and scope of the asserted claims as interpreted by the Court." More specifically, Vicor argues Judge Craven, in recommending Cisco's motion for summary judgment of non-infringement regarding the new CPNs be granted, clarified that the new-CPN[s] may infringe the asserted claims to the extent SynQor could prove systems incorporating the new-CPNs "operat[e] only within the 'non-regulating mode.'" *Id.* Thus, according to Vicor, "the claims encompass 'dual mode' converters *insofar* as such converters are used in a manner that *only* operates within the non-regulating mode." *Id.* (emphasis original). Vicor further notes Judge Craven recommended in both the '286 and '287 cases that SynQor's previous motion for summary judgment on the defendants' § 112 arguments be denied. Vicor argues the "same material issues of fact that precluded summary judgment as to written description, enablement, and indefiniteness are still present here." *Id.*

Specifically, Vicor claims the asserted patents are invalid for lack of written description and enablement – at a minimum, there is a factual dispute on the issue. *Id.* at 3-5. Vicor further asserts SynQor has not demonstrated the asserted claims are definite. *Id.* at 5 (noting the statements made in footnote 5 of the Non-Infringement R&R suggest that infringement turns on how the converter is operated in practice, "which blurs the line between method and apparatus"). Acknowledging Judge Craven previously found the asserted claims were not indefinite, Vicor states she did so in a different context. *Id.* ("Previously, SynQor argued that the new-CPNs always infringe, while Cisco argued they never infringe or alternatively that the claims were indefinite. In contrast, the current issue – whether the claims are indefinite under the Court's current interpretation that the new-CPNs sometimes infringe – was not presented.").

In its reply, SynQor notes that Vicor's § 112 arguments "have always turned on whether Cisco's dual-mode converters were found to infringe." Dkt. No. 434 at 1. According to SynQor, "[n]o one disagrees that the result of Judge Craven's R&R addressing their infringement is that they do not infringe – Cisco and SynQor even stipulated to that." *Id.* However, SynQor asserts "Vicor should be held to its prior position that these defenses were contingent and summary judgment should be granted." *Id.*

In its surreply, Vicor states the asserted claims, as interpreted by Judge Craven, encompass subject matter – "dual mode" converters – which are neither described nor enabled. And, according to Vicor, because infringement allegedly turns on how a "dual mode" converter is used, Vicor argues SynQor's motion as to indefiniteness should also be denied. Dkt. No. 493 at 1.

As urged by SynQor, and shown in Section III.C.1-3 above, Vicor presented its § 112 challenges as contingent on whether the no longer accused dual-mode converters were found to infringe. Dkt. No. 379 at 4 (citing Giesselmann Report, ¶ 892 ("to the extent that the claims could

be interpreted (as SynQor interprets them) to encompass a 'dual mode' converter . . . each of these asserted claims is invalid for lack of written description"); also citing *id.*, ¶ 938 ("[t]o the extent that the claims could be interpreted (as SynQor contends) to encompass a 'dual mode' converter . . . each of the non-regulating asserted claims is invalid for lack of enablement"); also citing Dkt. No. 213 (Vicor's pre-stay response to SynQor's objections to § 112 R&R) at 4 ("to the extent that the [Non-Infringement R&R] is not adopted by the Court, and the claims are understood to encompass dual-mode CPNs, this Court should deny SynQor's motion, and should instead grant summary judgment in favor of Vicor that the asserted claims are indefinite.")). Vicor's § 112 challenges are based on SynQor's previous infringement allegations and related alleged claim scope.

It is doubtful that such infringement allegations could properly support a § 112 defense. *See Adaptix, Inc., v. Alactael-Lucent USA, Inc.*, Civil Action No. 6:12-cv-22, Dkt. No. 667, at 7-12 (granting judgment as a matter of law to plaintiff because defendants only written description evidence was plaintiff's infringement contentions); *REC Software USA, Inc. v. Bamboo Solutions Corp.*, 2012 U.S. Dist. LEXIS 124609, *33-*34 & n.6 (denying defendant's summary judgment motion on written description for focusing on the "propriety of the court's Markman construction" and plaintiffs' "infringement theory" rather than "examining the disclosures of the specification and the claim language"). Here, Vicor's position is even further afield because SynQor is no longer urging the infringement theory Vicor relies upon. The Court agrees with SynQor that dropped infringement contentions cannot raise a genuine dispute of fact concerning Vicor's § 112 defenses.

Vicor's responsive argument is based, in large part, on its interpretation of statements contained in the pre-stay Non-Infringement R&R in a different case. This R&R was never adopted

21

by the District Court. Indeed, it was later vacated by Judge Craven following the successful mediation in the '287 case. What is more, the Court agrees with SynQor that allowing Vicor to present § 112 defenses – which have been presented by Vicor as contingent on positions SynQor is no longer taking in this case – "would only confuse the jury and create an irrelevant and prejudicial side-show." Dkt. No. 379 at 5.

The Court recommends SynQor's renewed motion for summary judgment on Vicor's § 112 affirmative defenses and counterclaims be granted based on SynQor's withdrawal of the dual mode theory of infringement. Based on the foregoing, it is

**RECOMMENDED** that SynQor's Renewed Motion for Summary Judgment on Vicor's §112 Affirmative Defenses and Counterclaims (Dkt. No. 379) be **GRANTED**.

<u>Objections</u>

Ordinarily, within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. 636(b)(1)(C). **However, considering the fast-approaching trial, any objections must be filed on or before October 3, 2022.**

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from de novo review by the district judge of those findings, conclusions and

recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

SIGNED this the 26th day of September, 2022.


J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE