~~**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**~~

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SYNQOR, INC., <br><br> Plaintiff, <br><br> v. <br><br> VICOR CORPORATION, <br><br> Defendant. | Civ. No. 2:14-CV-287-RWS-JBB <br><br> **JURY TRIAL DEMANDED** <br><br> ~~**FILED UNDER SEAL**~~ |

**SYNQOR'S MOTION FOR A NEW TRIAL**

~~**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**~~

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD ............................................................................................................ 2

ARGUMENT ......................................................................................................................... 2

I.     SynQor was Prejudiced by the Consolidated Trial of Vicor's State-Law Counterclaims and Equitable Defenses. ................................................................................................... 2

     A.     Prejudice from Consolidation is Grounds for a New Trial. .................................. 2

     B.     The Consolidated Trial Resulted in the Admission of Highly Prejudicial and Inflammatory Exhibits and Testimony. ................................................................. 3

     C.     Vicor's Improper Strategy Tainted the Verdict. ..................................................... 6

II.     The Damages Verdict was Affected by Instructional Error. ............................................... 9

III.     CONCLUSION ................................................................................................................... 11

**~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AG Equip. Co. v. AIG Life Ins. Co.*,
  No. 07-cv-556, 2009 WL 236019 (N.D. Okla. Jan. 29, 2009) ...........................................2, 3, 7

*Arnold v. Eastern Air Lines, Inc.*,
  712 F.2d 899 (4th Cir. 1983) (en banc) ................................................................................3, 8

*Cain v. Armstrong World Indus.*,
  785 F. Supp. 1448 (S.D. Ala. 1992) ......................................................................................3, 8

*Conway v. Chem. Leamean Tank Lines, Inc.*,
  525 F.2d 927 (5th Cir. 1976) .................................................................................................6, 8

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
  946 F.3d 1367 (Fed. Cir. 2020) ..................................................................................................4

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970) ...........................................................................................9

*Laitram Corp. v. Hewlett–Packard Co.*,
  791 F. Supp. 113 (E.D. La. 1992) ..............................................................................................2

*O'Rear v. Fruehauf Corp.*,
  554 F.2d 1304 (5th Cir. 1977) ....................................................................................................7

*Powell v. Home Depot U.S.A., Inc.*,
  663 F.3d 1221 (Fed. Cir. 2011) ..................................................................................................9

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  No. 09-cv-5235, 2016 WL 4446991 (N.D. Cal. Aug. 24, 2016) ..............................................10

*Sibley v. Lemaire*,
  184 F.3d 481 (5th Cir. 1999) ......................................................................................................2

*Sycamore IP Holdings LLC v. AT & T Corp.*,
  294 F. Supp. 3d 620 (E.D. Tex. 2018) .......................................................................................4

*Syneron Medical Ltd. v. Invasix, Inc.*,
  No. 8:16-cv-143, 2018 WL 4696969 (N.D. Cal. Aug. 27, 2018) ............................................10

*VirnetX Inc. v. Apple Inc.*,
  No. 6:12-cv-855, 2016 WL 4063802 (E.D. Tex. July 29, 2016) ...............................................3

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

**Other Authorities**

Fed. R. Civ. P. 42 ................................................................................................................. 2

Fed. R. Civ. P. 59(a) ............................................................................................................ 2

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

## INTRODUCTION

SynQor moves for a new trial on infringement of the '190 patent, and on damages. The October 2022 trial was influenced by Vicor's calculated and improper litigation strategy. Vicor used meritless state-law counterclaims and equitable defenses as vehicles to admit inflammatory and prejudicial evidence and testimony, in the hope that the jury would ignore the evidence of Vicor's willful infringement. Vicor made little effort at trial to support these arguments on the merits—indeed, the Court granted judgment as a matter of law on Vicor's state-law counterclaims, and Vicor *withdrew* its equitable defenses at the close of evidence, rather than face a verdict. But these claims and defenses served Vicor's intended purpose. They allowed Vicor to inject highly inflammatory and prejudicial allegations of misconduct by SynQor into the trial. In pursuit of this strategy, Vicor also disobeyed Judge Baxter's pretrial direction not to make its inflammatory allegations a "focal point" or "central theme" of the trial, and instead repeatedly emphasized them and explored them with multiple witnesses, turning these topics into a *centerpiece* of the trial. The Court ultimately halted Vicor's improper attempt to derail the trial, and gave a curative instruction, but by then it was too late. It is well-recognized that, in the face of emphatic and repeated exposure to prejudicial testimony, a jury cannot reasonably be expected to ignore it. And the prejudice is demonstrated by the verdict, which reached a puzzling outcome *no party* advocated for—that Vicor willfully infringed the '702 patent, but did not infringe the substantially similar '190 patent. This verdict suggests a compromise among a split jury improperly influenced by Vicor's strategy, and certainly one cannot say with "fair assurance" that it does not. SynQor thus respectfully requests a new, *separate* trial on infringement of the '190 patent and damages, the issues influenced by Vicor's conduct.

A new trial on damages for the '702 patent is also necessary for an additional and independent reason. The damages verdict was infected with an instructional error. The jury was instructed at Vicor's request that it could not set a reasonable royalty in the amount of SynQor's lost profits. But that was an error—nothing prevents such an award. And this erroneous instruction affected SynQor's substantial rights.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## LEGAL STANDARD

Rule 59 provides that a new trial on some or all issues may be granted "for any reason for which a new trial has heretofore been granted." Fed. R. Civ. P. 59(a). A new trial should be granted when "it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (citation omitted).

## ARGUMENT

**I.  SynQor was Prejudiced by the Consolidated Trial of Vicor's State-Law Counterclaims and Equitable Defenses.**

**A.  Prejudice from Consolidation is Grounds for a New Trial.**

Rule 42 provides that a court may order a consolidated trial of distinct actions, or separate trials of claims or defenses within a single action. Fed. R. Civ. P. 42. The avoidance of "prejudice" is specifically called out in the rule as a ground for separate trials. Fed. R. Civ. P. 42(b). And courts have held that the potential for prejudice is the "most important consideration" in deciding whether to order a separate trial. *E.g., Laitram Corp. v. Hewlett–Packard Co.*, 791 F. Supp. 113, 115 (E.D. La. 1992).

It follows from these principles that, if it becomes clear that a party's "litigation strategy" is to "attempt to use their claims" to introduce "irrelevant and prejudicial evidence" in the hope of influencing the jury's resolution of another claim, then "separate trials are necessary to prevent prejudice." *AG Equip. Co. v. AIG Life Ins. Co.*, No. 07-cv-556, 2009 WL 236019, at *2–3 (N.D. Okla. Jan. 29, 2009). So, for example, in *AG Equip. Co.*, although multiple claims were initially consolidated for discovery, before trial it emerged that the plaintiffs' "litigation strategy" would be to use certain claims as a vehicle to introduce inflammatory evidence to the jury, such as allegations of personal animosity and theft of confidential information, which were "designed to evoke sympathy for plaintiffs" and improperly sway the result on other claims in the case. *Id.* at *2 (*e.g.*, inflammatory and prejudicial allegations of actions "motivated by anger" and theft of "confidential files"). The court concluded that separate trials were necessary to avoid prejudice

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

in such circumstances—indeed, that "the Court would abuse its discretion if it failed to sever or order separate trials of these matters." *Id.* at *2.

Likewise, if claims are tried together, and—as the trial plays out—prejudice occurs from consolidation, then separate retrials are necessary. For example, this Court previously concluded as much in *VirnetX*. *See VirnetX Inc. v. Apple Inc.*, No. 6:12-cv-855, 2016 WL 4063802 (E.D. Tex. July 29, 2016). As the Court explained, it consolidated two matters—one of which involved a prior verdict against Apple, "*Apple I*"—"[a]ware that the parties planned to rely on *Apple I* throughout the trial (but unaware of the extent of that reliance)." *Id.* at *3. As here, the Court provided guidance before trial, but the parties then "went well beyond what was appropriate," including making "repeated references" to *Apple I* and exploring the issue "in depth with multiple witnesses." *Id.* at *5–7 ("[t]he effect of *Apple I* on the jury in the consolidated case could not be fully appreciated until it was given context within the trial"). The Court concluded that—despite the jurors' best efforts—"one cannot say, with fair assurance" that the consolidation had not prejudiced the trial of the second action, and ordered separate retrials. *Id.* at *5, 7 (quoting *Conway v. Chem. Leamean Tank Lines, Inc.*, 525 F.2d 927, 930 (5th Cir. 1976)). Other courts have reached the same conclusion in similar circumstances. *E.g., Cain v. Armstrong World Indus.*, 785 F. Supp. 1448, 1455 (S.D. Ala. 1992) ("despite all the precautionary measures taken by the Court," the consolidated trial "prejudiced the jury," necessitating separate re-trials); *Arnold v. Eastern Air Lines, Inc.*, 712 F.2d 899 (4th Cir. 1983) (en banc) (ordering new trials).

      **B.**    **The Consolidated Trial Resulted in the Admission of Highly Prejudicial and Inflammatory Exhibits and Testimony.**

In this case, Vicor pursued a deliberate and improper litigation strategy. It first asserted state-law counterclaims and equitable defenses that alleged improper conduct by SynQor. Vicor's counterclaims alleged, among other things, theft of Vicor confidential information, motivated by a personal vendetta between the companies, in the hope of stealing Vicor's customers. *E.g.*, Dkt. 682 at 8. And Vicor's equitable defenses alleged that SynQor had

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

inequitably lulled Vicor into complacency—or waived its patent rights—before striking years later; in the words of Vicor's counsel, so long as these defenses are "in this case," "[SynQor's] conduct is at issue." Dkt. 663 at 74:3–7; Dkt. 3 at 14. Then, after asserting these claims and defenses, Vicor insisted (over SynQor's objections) on a consolidated trial with SynQor's patent claims, including taking the unusual step of seeking an advisory verdict from the jury on the equitable defenses, even over Judge Baxter's repeated warnings that it would limit the evidence Vicor could present. *See* Dkt. 385, 410, 438, & 464; *see also* Dkt. 662 at 22:8–42:10.

Despite its insistence on a common trial, Vicor then made little effort to present evidence to support essential elements of these claims and defenses. *See Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1376 (Fed. Cir. 2020) (observing that "[i]n addition to failing [to prove] the primary indicators of non-obviousness, [party] did not bother to try to show secondary factors of non-obviousness," and concluding that "insistence on trying [the issue of obviousness] was largely a charade" for other purposes). At the close of evidence, the Court resolved Vicor's state-law counterclaims against Vicor by granting pre-verdict judgment as a matter of law under Rule 50(a), after Vicor failed to present legally sufficient evidence. Dkt. 734 at 1800:2–1802:12; Dkt. 744 at 3. As for the equitable defenses, Vicor's equitable estoppel defense was flatly contradicted by the trial testimony of its own CEO, and Vicor *withdrew* its equitable defenses at the close of evidence, rather than face a verdict—and did so just weeks after insisting that it needed to take these defenses to the jury. *See* Dkt. 732 at 1338:19–22 ("SynQor has never been a factor with respect to anything that we did"); *Sycamore IP Holdings LLC v. AT & T Corp.*, 294 F. Supp. 3d 620, 656–67 (E.D. Tex. 2018) (equitable estoppel requires reliance); Dkt. 720-1 (withdrawing).

Despite their exit from the case at the *close* of evidence, these claims and defenses nonetheless served Vicor's purpose—they allowed Vicor to *introduce* inflammatory and prejudicial evidence into the trial, in the hope of influencing the resolution of SynQor's patent claims. And—whether or not motivated by this purpose—they certainly had that effect.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

At the pretrial conference, Vicor repeatedly appealed to these claims and defenses to admit prejudicial exhibits. *E.g.*, Dkt. 663 at 81:8–82:7 ("Kill Vicor"), 82:12–83:14 ("personal animosity" between parties), 85:3–14 (SynQor trying to "damage" to Vicor), 91:25–92:19 ("Kill Vicor"). Judge Baxter recognized the potential for prejudice, and excluded some exhibits, but also concluded that others were relevant to Vicor's contentions and necessary to admit, given the consolidated trial. *See* Dkt. 663 at 58:12–62:4.

However—just like in *VirnetX*—Judge Baxter also provided guidance to the parties on the scope of acceptable trial conduct. Specifically, Judge Baxter explained that his decision to admit the above-referenced exhibits was accompanied by the instruction that Vicor's inflammatory allegations—and particularly accusations of "personal animosity"—should not become a "focal point" or "central theme" of the trial. Dkt. 663 at 83:5–14 ("this is one piece of your state law counterclaims and should not become a focal point of the entire trial that involves patent litigation"). Vicor's counsel purported to accept the instruction. Dkt. 663 at 83:15 ("Understood, Your Honor."). But Vicor then disregarded Judge Baxter's instruction, and went well beyond what was appropriate.

Vicor devoted days of testimony to these themes, and explored them in depth with multiple witnesses. For example, Vicor conducted a long and highly charged cross examination of SynQor's Mr. Hofmann. Directly contrary to Judge Baxter's instruction, Vicor *fronted* to the jury the idea of a supposed "personal vendetta" between the parties, in the guise of mentioning that it might be something the jury was "wondering" about. Dkt. 731 at 1066:18–22 ("if the jury is wondering or Vicor's wondering whether or not there's some sort of personal vendetta between SynQor and Vicor"). And Vicor repeatedly explored other prejudicial themes, including "Kill Vicor," SynQor's "ethics," and the idea of a unique vendetta, returning to them again and again. *E.g.,* Dkt. 731 at 1036:18–1043:25 (repeated questioning on SynQor's "ethics"), 1061:15–20 ("Kill Vicor"), 1064:17–21 ("Kill Vicor"), 1066:14–17 ("[b]y the way, there is no other competitor file at SynQor named after any competitor, other than Vicor, correct?"), 1074:15–17 ("Kill Vicor"), 1074:22–24 ("Kill Vicor"), 1075:4–8 ("Kill Vicor")

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

1075:12–19 ("Kill Vicor"), 1075:25–1076:2 ("You know, sir, that this effort to take other people's pricing information, particularly Vicor's, that's not something new at SynQor, is it, sir?").

Vicor also repeatedly returned to the same themes with other witnesses. Vicor played deposition clips on these topics, such as the deposition of SynQor employee, Mr. Mathis, where Vicor again returned to the "Kill Vicor" theme, and again made efforts to play up the idea of particular animosity between SynQor and Vicor. *E.g.*, Dkt. 732 at 1398:17–22 ("Kill Vicor," noting two "exclamation point[s]"), 1389:25–1390:4 ("Do you have a similar PowerPoint with the big – on Page 1, it has a whole, you know, no symbol across Vicor. Is there a similar PowerPoint for other competitors that has similar symbology on it?").

Vicor also put on its own live witness, Mr. Davies, and elicited improper hearsay testimony to further underscore Vicor's narrative—until the moment Vicor was stopped by the Court. *E.g.*, Dkt. 732 at 1430:2–6 (people "were telling me that SynQor employees and reps were going around and talking to the customers and saying really not nice things about Vicor"), 1430:16–21 ("over dinner, both customers were telling me that SynQor was telling them that the VI Chip product line was not reliable, it did not perform, it had quality problems, and they were saying really, really tough things about the company and about its products. THE COURT: Hold on just a moment.").

The Court ultimately halted Vicor's improper effort to derail the trial, and reprimanded Vicor for crossing the line set by Judge Baxter. Dkt. 732 at 1431:5–7 ("Judge Baxter said you all risked overdoing this testimony as a focus, and I think you've gone beyond that line."). But at that point, the damage had been done—the testimony and evidence was before the jury.

C.   **Vicor's Improper Strategy Tainted the Verdict.**

In a motion for a new trial, the question is whether one can say with "fair assurance" that a party's "substantial rights" were not affected. *Conway*, 525 F.2d at 930 (citation omitted). That cannot be said here. The Court ultimately did give a curative instruction—after granting judgment as a matter of law on Vicor's state-law counterclaims—instructing the jury that:

6

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

"During this trial, you heard evidence relating to Vicor's counterclaims for unfair competition under Massachusetts general law, Chapter 93A and tortious interference with prospective economic advantage. The Court has resolved these claims in SynQor's favor. You should, therefore, disregard any evidence solely related to these counterclaims in rendering your verdict." Dkt. 734 at 1881:1–8. But, in these circumstances, one cannot say with "fair assurance" that the jury followed the Court's limiting instruction, or that it unwound the prejudice to SynQor.

It is well-recognized that when highly inflammatory and prejudicial testimony comes in, and the content is repeatedly emphasized and explored with multiple witnesses, it is not realistic to expect jurors—even making best efforts—to be able to ignore it. *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1309 (5th Cir. 1977) ("cautionary instructions are effective only up to a certain point," and "after repeated exposure of a jury to prejudicial information, a judge realizes that cautionary instructions will have little, if any, effect in eliminating the prejudicial harm"—"you can throw a skunk into the jury box and instruct the jurors not to smell it, but it doesn't do any good"). And that is particularly true when a party is pursuing the introduction of prejudicial information as a strategy. *AG Equip.*, 2009 WL 236019, at *2 ("In most cases, the Court could assume that a jury would follow the Court's instructions to consider the evidence against each party separately. However, plaintiffs' litigation strategy to this point raises a serious concern that plaintiffs will attempt to use their claims against Heidenreiter to introduce irrelevant and prejudicial evidence against AIG.") (citations omitted).

Here, Vicor's prejudicial allegations were highly inflammatory, and repeatedly emphasized and explored with multiple witnesses throughout the trial. The Court was in the room as this testimony was elicited and recognized that Vicor had crossed the line. It was also clear that these allegations and testimony caught the attention of the jury, potentially influenced how the jurors saw the parties, and ultimately became—contrary to Judge Baxter's instructions—a central theme of the trial.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

In consolidated cases, courts have also looked to verdicts with puzzling or unusual results as indications of improper prejudice or influence. For example, a jury arriving at the same verdict on substantially different claims is one such indication. *Cain,* 785 F. Sup. at 1455 (strikingly similar verdicts on different claims). So is the converse—a jury arriving at significantly *different* verdicts on similar claims. *Arnold*, 712 F.2d at 907 (substantially different verdicts on similar claims).

The verdict here is such an indication. The jury concluded that Vicor willfully infringed the '702 patent. Dkt. 741 at 1, 4. But then—for the similar claim of infringement regarding the '190 patent, involving substantially similar arguments and evidence—the jury ignored the evidence, and concluded that Vicor did not infringe the '190 patent at all. Dkt. 741 at 1. This striking outcome is something for which *no party* advocated. And it is a strong indication that at least some jurors were improperly swayed by Vicor's prejudicial allegations, resulting in a split jury and a compromise on infringement. Indeed, the jury's deliberations reflect this—after nearly a full day of deliberations, the jury reported at 11:15 A.M. on October 26 that "[w]e are deadlocked," followed shortly after by a note that "[w]e came to an agreement" Dkt. 742 at 5–6.

In these circumstances, one cannot say with "fair assurance" that SynQor's substantial rights were not affected by Vicor's improper tactics. *Conway*, 525 F.2d at 930. And the same improper prejudice would be expected to influence not just infringement, but also the damages award, which determines the compensation to SynQor for infringement. SynQor thus respectfully requests a new, *separate* trial on infringement of the '190 patent and on damages (for both patents), the issues on which it cannot be said with "fair assurance" that SynQor was not prejudiced by Vicor's improper strategy.

The scope of the retrial is also partially controlled by SynQor's motion for judgment as a matter of law on the '190 patent. That motion seeks judgment that Vicor willfully infringed the '190 patent at least as to Vicor's accused bus converters with transition times *less* than 20%. If the Court grants that motion, then the new, separate trial should be limited to addressing (1)

8

whether the accused bus converters with transitions *greater* than 20% satisfy the "short transitions" limitations and should therefore be included in the damage base, and (2) the royalty rate (or lost profits per unit amount) to be applied. If the Court denies SynQor's motion on the '190 patent, then the retrial should address both infringement of the '190 patent and damages.

**II.     The Damages Verdict was Affected by Instructional Error.**

A new trial on damages for the '702 patent, at the very least, is also necessary for an additional and independent reason. The jury's damages verdict was tainted by an instructional error. The jury was instructed at Vicor's request that it could not set a reasonable royalty in the amount of SynQor's lost profits, on the basis of Vicor's objection that SynQor was trying to recover the exact amount of its lost profits in the form of a reasonable royalty. Specifically, the jury was instructed:

> Although SynQor's anticipated lost profits may be considered to determine a reasonable royalty, under several of the reasonable royalty factors that are -- I will describe momentarily, the law does not authorize the direct setting of the reasonable royalty in the amount of SynQor's lost profits.

Dkt. 734 at 1874:17–22.

But this instruction was an error. Nothing prevents a jury from setting a reasonable royalty in the amount of lost profits.

Indeed, the Federal Circuit has expressly instructed that a patentee's lost profits are not even a *cap* or upper limit on the amount of a reasonable royalty. *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1238 (Fed. Cir. 2011) (rejecting argument that "a reasonable royalty cannot exceed lost profits"). In other words, a jury could award a reasonable royalty that is even *higher* than the patentee's lost profits. *Id.* By the same token, an *infringer's* profits are also not a cap (or a floor) on the amount of a reasonable royalty. *Id.* at 1238–39. And *Georgia-Pacific* itself instructs that a patent owner may reasonably negotiate based on the profits it would expect to make, particularly when infringement would introduce direct competition. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1127 (S.D.N.Y. 1970) ("[t]he result of GP's infringement was to interfere with that monopoly and, as planned, to put GP in direct

9

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

competition," and "[i]n the hypothetical negotiations, USP would have been reasonable in taking the position that it would not accept a royalty significantly less than the profit it was making by its policy of licensing no one to sell striated fir plywood in the United States"). Under these principles, no rule of law stops a patent owner from recovering "one hundred percent of lost profits" in the form of a reasonable royalty. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 09-cv-5235, 2016 WL 4446991, at * 9–10 (N.D. Cal. Aug. 24, 2016), *rev'd in part on other grounds by* 904 F.3d 965. The sole support cited by Vicor—*Syneron Medical Ltd. v. Invasix, Inc.*, No. 8:16-cv-143, 2018 WL 4696969, at *4 (N.D. Cal. Aug. 27, 2018)—is an outlier that misunderstands governing law.

Under the proper framework, the relevant question is simply what would have happened in the hypothetical negotiation. There is no *ex ante* constraint on the outcome. In that negotiation, SynQor could have negotiated—as its expert and witnesses testified—for a reasonable royalty accounting for its lost profits, as SynQor would have had no incentive to accept a lower amount from a competitor. *See, e.g.,* Dkt. 731 at 1017:2–9 ("Q. Mr. Hofmann, you negotiated a number of these authorization royalties and other license agreements with end customers. Would SynQor have accepted less from Vicor than it was receiving from the end customers? A. No, I mean – no, we would have no incentive to do that. We would want to receive an amount that would reflect the profits we would have made had we sold the converters ourselves."), 1125:9–14 ("[SynQor] wanted to sell products, and if it couldn't sell the products, it was seeking a royalty that would be consistent with the profit it would make"). SynQor's expert also provided numerous other sources of evidence to show that this royalty would have been agreed to in the hypothetical negotiation. *See* Dkt. 731 at 1091:22–1167:9. Vicor and its expert were, of course, free to disagree, and argue that Vicor would have negotiated for something else. And that dispute would be for the jury to resolve. But Vicor's instruction effectively pre-judged this dispute, and directed the jury to disregard SynQor's theory. Indeed, in closing arguments, Vicor's counsel prominently pointed to this instruction, and used it to make this very argument,

10

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

telling the jury that SynQor's damages theory violated the law, simply because the amount of SynQor's reasonable royalty was equal to (or close to) the amount of its lost profits:

> I invite you to look at all of these instructions, but what does it say explicitly -- the law does not authorize the direct setting of the reasonable royalty in the amount of SynQor's lost profits.
>
> It doesn't allow it.  So when they brought Mr. Reed here, they put him up on the stand.  They gave you testimony about what these damages are based -- and said over and over and over again, this is what SynQor's lost profits would be.
>
> Can't do that.  His Honor said we can't do that.  So we know what they brought you is wrong.

Dkt. 734 at 1954:4–14.

That argument, and that instruction, were erroneous.  And after hearing this erroneous position, the jury ultimately awarded a damages figure in the range suggested by Vicor—$6.5 million, when Vicor had argued that damages should be capped by its own profits ($13 million). Dkt. 741 at 5.  In these circumstances, it cannot be said with "fair assurance" that SynQor's substantial rights were not affected by the instructional error.  Accordingly, SynQor alternatively respectfully requests a new trial on damages for the '702 patent found willfully infringed.

## III.   CONCLUSION

For the foregoing reasons, SynQor respectfully requests that the Court grant a new, separate trial limited to infringement (and willful infringement) of the '190 patent, as well as on damages for both the '190 and '702 patents.  At the very least, SynQor requests that the Court grant a new trial on damages for the '702 patent.

~~**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**~~

|  |  |
|---|---|
| Dated: December 23, 2022 | Respectfully submitted,<br><br> /s/  *Thomas D. Rein*  <br>Thomas D. Rein, Lead Attorney (*pro hac vice*)<br>trein@sidley.com<br>Stephanie P. Koh (*pro hac vice*)<br>skoh@sidley.com<br>Paul J. Rogerson (*pro hac vice*)<br>progerson@sidley.com<br>SIDLEY AUSTIN LLP<br>One South Dearborn<br>Chicago, IL 60603<br>Telephone: 312-853-7000<br>Facsimile: 312-853-7036<br><br>Michael D. Hatcher<br>Texas State Bar No. 24027067<br>mhatcher@sidley.com<br>Phillip M. Aurentz<br>Texas State Bar No. 24059404<br>paurentz@sidley.com<br>Michael L. Roberts<br>Texas State Bar No. 24106350<br>mlroberts@sidley.com<br>SIDLEY AUSTIN LLP<br>2021 McKinney Avenue, Suite 2000<br>Dallas, TX 75201<br>Telephone: 214-981-3300<br>Facsimile: 214-981-3400<br><br>Harry L. Gillam, Jr.<br>Texas State Bar No. 07291800<br>gil@gillamsmithlaw.com<br>GILLAM & SMITH LLP<br>303 South Washington Avenue<br>Marshall, TX 75670<br>Telephone: 903-934-8450<br>Facsimile: 903-934-9257<br><br>**ATTORNEYS FOR PLAINTIFF SYNQOR, INC.** |

12

~~**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**~~

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been served on all counsel of record by electronic mail on December 23, 2022.

                                             */s/   Thomas D. Rein*
                                             Thomas D. Rein

~~**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**~~

~~I hereby certify that the foregoing is authorized to be filed under seal pursuant to the Court's Protective Order entered on the 12th day of July 2012 ['54 case, Dkt. No. 204; '287 case, Dkt. No. 34].~~

                                             ~~*/s/   Thomas D. Rein*~~
                                             ~~Thomas D. Rein~~